# No. 15-3573

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

LIZ FERRARI,

      Plaintiff – Appellant,

v.                                       Appealed From 13-cv-
395

U.S. EQUITIES CORP.,
LINDA STRUMPF,
OLGA MOISES,

      Defendants – Appellees.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FROM THE DISTRICT COURT OF CONNECTICUT**

_____

**APPELLANT'S BRIEF**
_____

Anthony J. Majestro (WVSB 5165)
Powell & Majestro, PLLC
405 Capitol Street, Suite P1200
Charleston, WV 25301
Phone: 304-346-2889
Facsimile: 304-346-2895
amajestro@powellmajestro.com

*Counsel for Appellant, Liz Ferrari*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 Appellant Liz Ferrari is the plaintiff/appellant and makes the following disclosure statement:

1. Is party or amicus a publicly held corporation or other publicly held entity?  No.

2. Does party/amicus have any parent corporations?  No.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  No.

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  No.

5. Is party a trade association?  No.

6. Does this case arise out of a bankruptcy proceeding?  No.


s/ Anthony J. Majestro_____
Anthony J. Majestro (WVSB 5165)

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ............................................. i

TABLE OF CONTENTS.................................................................. ii

TABLE OF AUTHORITIES ........................................................... iv

JURISDICTIONAL STATEMENT ............................................... 1

STATEMENT OF ISSUES .......................................................... 2

STATEMENT OF THE CASE...................................................... 3

SUMMARY OF ARGUMENT ..................................................... 17

ARGUMENT .............................................................................. 22

I.      APPLICABLE STANDARD AND STANDARD
        OF REVIEW ....................................................................... 23

II.     THE DISTRICT COURT ERRED IN DISALLOWING
        TIME RELATING TO LITIGATION OVER
        PLAINTIFF'S INITIAL COMPLAINT AND TIME
        SPENT DRAFTING SUMMARY JUDGMENT MOTIONS ............... 26

        A.      Because Plaintiff's initial complaint fairly disclosed
                her claims to experienced debt collectors, and the
                record below evidenced that Defendants possessed
                actual understanding of the claims, the District Court
                erred in dismissing the Complaint and disallowing
                the time spent litigating its sufficiency........................................ 26

        B.      The District Court erred in finding the time spent
                by Plaintiff on summary judgment motions
                unreasonable given Defendants' aggressive
                litigation of the case................................................................... 32

III.    THE DISTRICT COURT ERRED IN REDUCING
COUNSEL'S HOURLY RATE FROM $400 TO
$250 PER HOUR WHEN DEFENDANTS CONCEDED
THAT $350 WAS APPROPRIATE AND SUBMITTED
NO EVIDENCE IN OPPOSITION TO THE AFFIDAVIT
FILED BY PLAINTIFF BELOW ......................................................... 37

IV.    THE DISTRICT COURT ERRED IN REDUCING COUNSEL'S
HOURS BY TWICE THE HOURS CLAIMED AND THEN USING
THE SAME FACTS TO JUSTIFY A LOWER ATTORNEY FEE
RESULTING IN A TRIPLE DEDUCTION FOR THE SAME
ALLEGEDLY IMPROPER CONDUCT ............................................. 40

CONCLUSION .............................................................................. 44

CERTIFICATE OF COMPLIANCE .............................................. 45

CERTIFICATE OF SERVICE........................................................ 45

# TABLE OF AUTHORITIES

**Cases**

Acumen Re. Mgmt. Corp. c. Gen. Sec. Nat. Ins. Co.
769 F. 3d 135 (2d Cir. 2014)............................................................... 27

Altman v. J.C. Christensen & Associates, Inc.
786 F. 3d 191 (2d Cir. 2015).............................................................. 27

Arbor Hill Concerned Citizens Neighborhood Ass'n. v.
City of Albany and Albany City Bd. Of Elections
522 F. 3d 182 (2d Cir. 2008).............................................................. 25

Avila v. Rubin
84 F.3d 222 (7th Cir. 1996)................................................................ 14

Azar v. Hayter
874 F. Supp. 1315 (N.D. Fla. 1995) .................................................. 35

Ballou v. Law Offices Howard Lee Schiff, P.C.
304 Conn. 348, 353, 39 A.2d 1075 (2012) ........................................ 14

Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.
111 F.3d 1322 (7th Cir. 1997)............................................................ 14

Bentley v. Great Lakes Collection Bureau
6 F. 3d 60 (2d Cir. 1993)................................................................... 34

Charles v. Lundgren & Associates, P.C.
119 F.3d 739 (9th Cir.  1997)............................................................. 14

Clomon v. Jackson
988 F.2d 1314, 1321 (2d Cir. 1993) ................................................... 15

Connecticut v. Doehr
501 U.S. 1 (1991)............................................................................... 14

Cunningham v. City of Los Angeles
879 F. 2d. 481 (9th Cir. 1988)............................................................ 42

Dina v. CUDA & Associates,
Civ. No. 3:12cv523 (JCH) (D. Conn. Dec. 31, 2013) ...................................... 15

Doyle v. Midland Credit Mgmt., Inc.
    722 F. 3d 78 (2d Cir. 2013) .................................................................... 43

Ellis v. Solomon and Solomon, P.C.
591 F.3d 130, 135 (2d Cir. 2010) ..................................................................... 14

Emanuel v. American Credit Exchange
    870 F. 2d 805 (2d Cir. 1989) ................................................................. 23

Foster v. D.B.S. Collection Agency
    463 F. Supp. 2d 73 (S.D. Ohio 2006) .................................................... 36

Goldberger v. Integrated Res. Inc.
    209 F. 3d 43 (2d Cir. 2000) .................................................................... 25

Hart v. FCI Lender Services, Inc.
    797 F. 3d 219 (2d Cir. 2015) .................................................................. 27

Heintz v. Jenkins
    514 U.S. 291 (1995) ................................................................................ 14

Hooks v. Forman, Holt, Eliades & Ravin, LLC
    717 F. 3d 382 (2d Cir. 2013) .................................................................. 14

Jacobson v. Healthcare Fin. Servs. Inc.
    516 F. 3d 85 (2d Cir. 2008) .................................................................... 41

Johnson v. City of Shelby, Miss.
    135 S. Ct. 346 (2014) .............................................................................. 26

Kassim v. City of Schenectady
    415 F. 3d 246 (2d Cir. 2005) .................................................................. 43

Keiler v. Harlequin Enters. Ltd.
    751 F. 3d 64 (2d Cir. 2014) .................................................................... 37

Kickham Hanley P.C. v. Kodak Ret. Income Plan
    558 F. 3d 204 (2d Cir. 2009)................................................................. 25

Kroshnyi v. United States Pack Courier Servs. Inc.
    771 F. 3d 93 (2d Cir. 2014).................................................................... 24

Lipsett v. Blanco
    975 F. 3d 934 (1st Cir. 1992) ................................................................ 33

McDaniel v. Cnty. of Schenectady
    595 F. 3d 411 (2d Cir. 2010)................................................................. 25

McGowan v. King, Inc.
    661 F. 2d 48 (5th Cir. 1981).................................................................. 33

Millea v. Metro-North R. Co.
    658 F. 3d 154 (2d Cir. 2011)................................................................. 23

Moreno v. City of Sacramento
    534 F. 3d 1106 (9th Cir. 2008)............................................................. 42

Nelson v. Chase Manhattan Mortgage Corp.
    282 F.3d 1057 (9th Cir. 2002)............................................................. 14

Newman v. Boehm, Pearlstein & Bright, Limited
    119 F.3d 477 (7th Cir. 1997)................................................................ 14

Odell v Wallingford Municipal FCU,
    2013 WL 4734783 *34 (New Haven Super. Aug. 8, 2013)................... 15

Orchano v. Advanced Recovery, Inc.
    107 F. 3d 94 (2d Cir. 1997).................................................................. 38

Original Ballet Russe, Ltd. v. Ballet Theatre, Inc.
    133 F. 2d 187 (2d Cir. 1943)................................................................ 27

Pacheco v. Joseph McMahon Corp.,
    Civ. No. 3:10cv 464 (AWT) (D. Conn. May 23, 2014)......................... 15

Perdue v. Kenny A. ex rel Winn
    559 U.S. 542; 130 S. Ct. 1662 (2010) .................................................. 24

Pipiles v. Credit Bureau of Lockport
    886 F. 2d 22 (2d Cir. 1989).................................................................. 23

Poirier v. Alco Collections, Inc.
    107 F.3d 347 (5th Cir. 1997)................................................................ 14

Quarantino v. Tiffany & Co.
    166 F. 3d 422 (2d Cir. 1999)................................................................ 41

Rodriguez v. Saucier
    108 Conn. App. 599; A. 2d 1067 (2008) .............................................. 35

Romea v. Heiberger & Assoc.
163 F.3d 111 (2d Cir. 1998).................................................................. 14

Russell v. Equifax A.R.S.
    74 F. 3d 30 (2d Cir. 1996)................................................................... 34

Savino v. Computer Credit
    164 F. 3d 81 (2d Cir. 1998).................................................................. 23

Schweizer v. Trans Union Corp.
    136 F. 3d 233 (2d Cir. 1998)................................................................ 34

Smith v. Campbell
    782 F. 3d 93 (2d Cir. 2015).................................................................. 26

Stolicker v. Muller, Muller, Richmond, Harms,
    Myers & Sgroi, P.C.
    387 F. Supp. 752 (W.D. Mich. 2005).................................................... 35

Thorne v Mackeyboy Auto, LLC,
    2013 WL 5879081, NNH-CV-10-6017210 Doc. No. 159.20
    (New Haven Super. Oct. 11, 2013) ...................................................... 15

Tolentino v. Friedman
    46 F. 3d 645 (7th Cir. 1995)...................................................................  24

Torres-Sotelo v. Mackeyboy Auto, LLC,
    NNH-cv-11-6017221 (Doc. No. 114.20)
    (New Haven Super. Apr. 22, 2013).......................................................  15

Townsend v. Benjamin Enterprises, Inc.
    679 F. 3d 41 (2d Cir. 2012)..................................................................  27

United States Football League v. National Football League
    887 F. 2d 408 (2d Cir. 1989)................................................................  25

Venes v. Professional Services Bureau, Inc.
    353 N.W. 2d 671 (Minn. App. 1984) ...................................................  24

Vincenty v. Bloomberg
    476 F. 3d 74 (2d Cir. 2007)..................................................................  26

Washington v. Philadelphia County Court of Common Pleas
    89 F. 3d 1031 (3d Cir. 1996)................................................................  39

**Statutes, Rules and Regulations**

15 U.S.C. 1692 ......................................................................................   1

15 U.S.C. 1692(e) ...................................................................................  28

15 U.S.C. 1692(f)(1) ...............................................................................  28

15 U.S.C. 1692(k)....................................................................................   1

15 U.S.C. 1692(k)(a)(3) ..........................................................................  23

Fed. R. Civ. P. 8) ....................................................................................  27

Fed. R. Civ. P. 54(c) ...............................................................................  27

## JURISDICTIONAL STATEMENT

This case is an appeal from an attorney fee award rendered in an action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 and various state claims. The District Court had original jurisdiction pursuant to 15 U.S.C. § 1692k, 28 U.S.C. §1331 and jurisdiction over the state claims pursuant to 28 U.S.C. § 1367. A stipulated judgment on the merits of the case was entered on December 24, 2014.[1] On October 22, 2015, the Court entered the Order Granting in Part Plaintiff's Fee Application.[2] Plaintiff filed a motion for reconsideration of the fee order on November 3, 2015[3] which was denied on November 4, 2015.[4] Plaintiff's timely Notice of Appeal from the attorney fee orders was filed on November 9, 2015.[5]

---

[1] JA:000007.

[2] JA:000535.

[3] JA:000541.

[4] JA:000585.

[5] JA:000586.

## STATEMENT OF THE ISSUES

I.      Whether the the District Court erred in reducing counsel's hours based on an allegedly deficient complaint and allegedly premature motion practice when the record established the Defendants understood the complaint and the Defendants refused fourteen offers to settle.

II.     Whether the District Court erred in reducing counsel's $400 hourly rate to $250 per hour when the Defendants conceded that $350 was appropriate and submitted no evidence in opposition to the affidavits filed by Plaintiff below establishing that $400 was the reasonable rate in the relevant market.

III.    Whether the District Court erred in reducing the hours recoverable by twice the hours claimed as unreasonable and then using the same facts to justify a lower attorney fee resulting in a triple deduction for the same allegedly improper conduct.

## STATEMENT OF THE CASE

This case is an appeal from attorney fee award entered by the Honorable Judge Jeffrey A. Meyer following the entry of judgment for the plaintiff in an action brought pursuant to the Fair Debt Collection Practices Act ("FDCPA") and Connecticut state remedies. Appellant, Liz Ferrari, the plaintiff below, appeals from the the Order Granting in Part Plaintiff's Motion for Attorney Fees dated October 22, 2015, the Order denying plaintiff's Motion for Reconsideration dated November 4, 2015, which appears as a summary order on the docket entry, and the Order Dismissing Complaint Without Prejudice Dated October 14, 2014 to the extent it served as the basis for forgoing fee orders. None of these orders were reported but they are reproduced in the Joint Appendix.[6]

The instant FDCPA case concerned a debt collection action filed in Connecticut state court. On or about May 23, 2012, Appellees U.S. Equities Corp., Linda Strumpf, Olga Moises (collectively "Defendants" or "Appellees"), issued a Small Claims Writ and Notice of Suit seeking to recover a judgment relating to Appellant's allegedly defaulted personal Chase credit card account in the amount of $3,329.43 plus costs.[7] The Writ and Notice was signed by Appellee

---

[6] JA:000535-540 (Fee Order); JA:000585 (Docket Entry of Order on Reconsideration); JA:000393-399 (Dismissal Order).

[7] JA:000064.

Moises.[8] The Statement of Service (Delivery) for Small Claims was signed by Linda Strumpf, Esq. on May 23, 2012, indicating service to Appellant Ferrari at 541 New Britain Avenue, Hartford, CT 06106.[9] The Complaint included the statement that Appellee Moises had mailed a letter to Appellant Ferrari ("Appellant") on April 23, 2010, which Appellees dispute as a scrivener error and claim mailing on April 23, 2012. Appellees U.S. Equities claims to have purchased Appellant's defaulted personal Chase credit card account.[10]

On June 18, 2012, the small claims case was filed and went to default judgment on July 24, 2012.[11] Appellees obtained a default judgment for $3,329.43 plus court costs, by filing an Affidavit of Debt falsely claiming personal knowledge of a Chase account, the assignment thereof to Turtle Creek Assets, and from Turtle Creek to U.S. Equities, signed by Appellee Moises, dated May 23, 2012.[12] Appellee Moises, the affiant, had never communicated with or worked for Chase, did not know what accounts had been assigned by Chase to Turtle Creek, had never worked for Turtle Creek, and could not and did not authenticate any of

---

[8] Id.

[9] JA:000065.

[10] JA:000022.

[11] JA:000009.

[12] JA:000072-75.

the documents used to obtain default, all of which were partial or incomplete on their face.[13] Appellants also appended periodic statements purportedly sent to an address of Ravenswood Road, West Hartford, an address at which Appellee Ferrari has never lived and did not receive mail. Ferrari was living in New Hampshire at the times in question.[14] In their state court action, Appellees also sought prejudgment interest and attorney fees, without sufficient evidence of their entitlement to these damages.[15]

Appellant Ferrari did not learn about the small claims action until her wages were attached.[16] Appellant Ferrari's subsequent motion to open the small claims judgment for improper service was granted.[17] On April 10, 2013, following trial, Judgment for U.S. Equities was entered by the small claims court in the amount of $1,801.28, with payments every month in the amount of $106.00, due and commencing on May 1, 2013.[18] The ultimate judgment was a fraction of the amount sought and did not contain prejudgment interest or attorney fees.[19]

---

[13] JA:000010.

[14] Id.

[15] JA:000010.

[16] JA:000010.

[17] JA:000021.

[18] JA:000508-509.

On March 22, 2013, Appellant filed her Complaint in the United States District Court, District of Connecticut, seeking relief pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 USC § 1692, the Connecticut Creditor's Collection Practices Act ("CCPA"), and the Connecticut Unfair Trade Practices Act.[20]

On July 9, 2013, Appellees filed their Motion for Judgment on the Pleadings on the basis that Plaintiff's Complaint allegedly failed to state a claim on which the Court could grant relief.[21] On July 29, 2013, Plaintiff filed her Opposition to Motion for Judgment on the Pleadings on the grounds it failed to meet the standards for judgment on the pleadings and the Plaintiff's Complaint stated a plausible claim for relief.[22] On August 12, 2013, Defendants then filed their Reply Brief in Support of Motion for Judgment on the Pleadings.[23] The Court granted

---

[19] JA:000508-509.

[20] JA:000009.

[21] JA:000028.

[22] JA:000115.

[23] JA:000123.

Defendants' Motion for Judgment on the Pleadings, in part, without prejudice to the Plaintiff re-filing an amended complaint on or before November 14, 2014.[24]

The District Court's opinion allowed the Defendants to claim they were left guessing about the nature of the plaintiff's claim. The assertion was disingenuous at best. Plaintiff's reply on the the fee motion contained an excerpt from Defendants' own motion for judgment on the pleadings filed July 9, 2013, which sets forth accurately the nature of plaintiff's claims. Plaintiff also described her claims in her Opposition to Judicial Notice and Opposition to Judgment on the Pleadings.[25]

The prefiling conference letter of May 20, 2014 also described Plaintiff's original claims. [26] These claims were later set forth in the summary judgment motion as asserting the same claims that Defendants knew about when they described plaintiff's claims at the outset. [27]

The crucial facts were the documents alleged: the small claims complaint and the letter referenced therein. The facts remained the same throughout.

---

[24] JA:000393.

[25] JA:000110-114, JA:000115-122; see also JA:000125 and JA:000148-149 (where Defendants again set forth plaintiff's claims accurately).

[26] JA:000174.

[27] JA:000175-182.

Defendants filed a deceptive small claims complaint and sought interest and fees not allowed by law.[28]

Defendants are sophisticated debt buyers. [29] Defendants were never litigating a complaint that was unintelligible to them. They were claiming that the small claims judgment was res judicata, and, as an afterthought, addressing the substantive legal issues raised by the complaint's allegations of misrepresentation.

Plaintiff moved for summary judgment on September 13, 2014 after Plaintiff received the permission of the Court to file it in a telephone conference that was held on September 12, 2014.[30] While work on the motion was commenced prior to the conference, that work was necessary to properly complete the prefiling conference letter of May 20, 2014.[31] With the entry of the dismissal order, the Court denied the summary judgment motion without prejudice. [32]

Subsequently, on November 1, 2014, Plaintiff filed her First Amended Complaint claiming the Defendants violated the FDCPA or CCPA by using:

---

[28] JA:000009-11, Complaint at ¶ 6, 15, 19, 21.

[29] JA:000347-348.

[30] JA:000538.

[31] JA:000174.

[32] JA:000393-399.

"false, deceptive or misleading means to collect the debt in their April 2013 collection letter as well as in their May 2013 small claims complaint and the affidavits submitted therein. Specifically, Defendants unlawfully claimed entitlement to and sought recovery of interest and attorney's fees that were not allowed by law or contract, made false statements, failed to provide an FDCPA-required notice, or brought suit on a time barred debt."[33]

While the amended complaint contained more detail, the basic allegations remained unchanged.[34]

Plaintiff then renewed her summary judgment motion.[35] The District Court, however, sua sponte entered an Order denying the motion without prejudice to refiling within 30 days of the filing of defendants' answer or, if defendants filed a motion to dismiss the complaint pursuant to Rule 12(b), within 30 days of the Court's resolution (if favorable to plaintiff) of any such motion to dismiss.[36]

Soon thereafter, the underlying case was settled. The parties entered a Stipulation for Judgment on December 10, 2014, wherein judgment was to enter in

---

[33] JA:000400.

[34] The March 22, 2013 complaint alleged that the small claims complaint had been issued on a future date, May, 2013. JA:000009. The year was plainly a typographical error, which unfortunately found its way into the amended complaint. JA:000400. The District Court placed great significance on this typographical error. JA:000395. There is no evidence that the parties were confused by the obvious typographical error.

[35] JA:000006 ([Doc. 61]).

[36] JA: 000006 ([Doc. 64]).

favor of Plaintiff in the amount of $3,000.00 with reasonable costs and attorney's fees to be determined by the Court. [37]

Following the entry of the Stipulation, Plaintiff filed her Fee Application seeking an award of fees and costs against the Defendants in the sum of $36,284.00 and $1,231.96 in costs, together with a memorandum and affidavit detailing Plaintiff Counsel's time and work expended on the case.[38] Defendants filed their opposition to Plaintiff's Fee Application arguing (1) the hourly rate of $400 was unreasonable, but conceded that $350 was reasonable; (2) the total number of hours expended by Plaintiff's counsel in the case was unreasonable and should be reduced from 90.71 to 16.95 hours; (3) the reasonable fee should be $5,932.50 based on 16.95 hours' of Plaintiff Counsel's work as calculated by Defendants; and (4) the Court, if it determined $5,932.50 was reasonable, should make a reduction from that amount based on Plaintiff's "limited success."[39] The opposition contained numerous misrepresentations of the record in the case regarding Defendants' supposed inability to comprehend Plaintiff's claims.

On October 22, 2015, the Court granted, in part, Plaintiff's Fee Application, disallowing '*twice* the hours claimed by plaintiff - 24.9 hours – that related to her

[37] JA:000410.

[38] JA:000411.

[39] JA:000451, JA:000453-454.

counsel's filing of the initial complaint and the ensuing litigation resulting from the complaint's supposed inadequacies,"[40] and reduced an additional 15.05 hours expended in connection with the preparation of allegedly "premature and unnecessary motions" for summary judgment. In spite of the Defendants' concession that $350 an hour was a reasonable rate,[41] the Court reduced the hourly rate from the $400 requested, to $250 per hour.[42] Ultimately, the Court awarded Plaintiff only $12,690 in attorney's fees and $1,231.96 in costs – a reduction of $23,594.00 or 65% of the original amount requested.[43]

Following entry of the Order, Plaintiff then filed her Motion to Reconsider on November 3, 2015, arguing that the ruling was based largely "on defendants' misrepresentations about the record in this case," and that fees should be awarded as requested based on precedent established by this Court.[44] On November 4, 2015, the Court denied Plaintiff's motion.[45]

---

[40] JA:000537.

[41] JA:000452 ("A more appropriate hourly rate would be $350, as approved in the Palmer case and other cases cited in the fee affidavit of Plaintiffs counsel.").

[42] JA:000539.

[43] JA:000540

[44] JA:000541.

[45] JA:000585.

The Court overlooked some two dozen settlement offers, all of which were aimed at resolving the case inexpensively, early on. It was Defendants who *chose* to litigate this case aggressively.[46]  Plaintiff made seventeen offers prior to briefing the summary judgment motions.[47]

In support of her motion for attorney fees, Plaintiff submitted her time records and extensive support for her requested hourly rate.  The affidavit[48] from Plaintiff's counsel, Ms. Faulkner showed among other things:

- She is an attorney with a nationwide federal practice, licensed in the United States Supreme Court, the Second, Fourth, Fifth, Sixth, Seventh, Eighth, and Tenth Circuit Courts of Appeals, the United States District Courts for the District of Connecticut and the Southern and Eastern Districts of New York, and Connecticut state courts who was admitted to practice in New York in 1963, and in Connecticut in 1967.

- She has eighteen years experience as a staff attorney with New Haven Legal Assistance Association, Inc., a nonprofit corporation.

---

[46] JA:000441-443.

[47] Id..

[48] JA:000435-440

- She is in a private practice, restricted to consumer-related matters, preferably for persons who cannot afford to pay a lawyer.

- She has extensive experience for more than forty five years in consumer matters, including litigation, conducting seminars and publications.

- She is frequently consulted by, and mentor, consumer practitioners from all over the country.

- She is the recipient of the prestigious Vern Countryman Award in 2002 from the National Consumer Law Center "for excellence and dedication in the practice of consumer law on behalf of low-income consumers."

- She is a past chair of the Consumer Law Section of the Connecticut Bar Association and was the editor of its newsletter for over ten years until 1998.

- She was a member of the Federal Reserve Board's Consumer Advisory Council.

- She was on the Board of Directors of the National Consumer Law Center and is presently a trustee thereof.

- She is a founding member of the National Association of Consumer Advocates, Inc.

- She has lectured for the Connecticut Bar Association, the National Consumer Law Center, the National Association of Consumer Advocates, the New Haven County Bar Association, National Association of Retail Collection Attorneys, Commercial Law League, on consumer laws, and has published articles in those fields.

- She is a contributing editor of the National Consumer Law Center's Truth in Lending Manual, Automobile Fraud Manual, Credit Discrimination Manual, Fair Credit Reporting Act Manual, Fair Debt Collection Manual, and supplements.

Ms. Faulkner has been involved in groundbreaking nationally reported cases, including Heintz v. Jenkins, 514 U.S. 291 (1995); Connecticut v. Doehr, 501 U.S. 1 (1991); Ballou v. Law Offices Howard Lee Schiff, P.C., 304 Conn. 348, 353, 39 A.2d 1075 (2012); Hooks v. Forman, Holt, Eliades & Ravin, LLC , 717 F. 3d 382 (2d Cir. 2013); Ellis v. Solomon and Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 2010); Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057 (9th Cir. 2002); Romea v. Heiberger & Assoc., 163 F.3d 111 (2d Cir. 1998); Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322 (7th Cir. 1997); Charles v. Lundgren & Associates, P.C., 119 F.3d 739 (9th Cir. 1997); Newman v. Boehm, Pearlstein & Bright, Limited, 119 F.3d 477 (7th Cir. 1997); Poirier v. Alco Collections, Inc., 107 F.3d 347 (5th Cir. 1997); Avila v. Rubin, 84 F.3d 222 (7th

Cir. 1996); <u>Bentley v. Great Lakes Collection Bureau, Inc.</u>, 6 F.3d 60, 62 (2d Cir. 1993); <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1321 (2d Cir. 1993).

Ms. Faulkner presented the District Court with a number of her approved fee awards that were consistent with the $400 rate she requested. In one case, the client paid for her services at $500 per hour. Recent fee awards at the $400 per hour rate included: <u>Pacheco v. Joseph McMahon Corp.</u>, Civ. No. 3:10cv 464 (AWT) (May 23, 2014); <u>Dina v. CUDA & Associates</u>, Civ. No. 3:12cv523 (JCH) (Dec. 31, 2013); <u>Thorne v Mackeyboy Auto</u>, LLC, 2013 WL 5879081, NNH-CV-10-6017210 Doc. No. 159.20 (New Haven Super. Oct. 11, 2013); <u>Odell v Wallingford Municipal FCU</u>, 2013 WL 4734783 *34 (New Haven Super. Aug. 8, 2013); <u>Torres-Sotelo v. Mackeyboy Auto, LLC</u>, NNH-cv-11-6017221 (Doc. No. 114.20) (New Haven Super. Apr. 22, 2013). She presented other other older awards at $350 per hour since 2005.

Her requested $400 per hour rate is consistent or below the market in the District of Connecticut Other for attorneys of comparable or lesser skill and experience (albeit in different fields): <u>Sama v. Colvin</u>, 2014 WL 2921661, at *4 (D. Conn. June 25, 2014) (hourly rate of $785.30 for "many years of experience and expertise in Social Security litigation."); <u>Barati v. Metro-North R. Co.</u>, 2013 WL 1296484 *2 (D. Conn. 2013) ($525 for lead attorney, $375 for attorney with 12 years' experience, surveying fee awards); <u>Valley Housing Ltd v. City of Derby</u>,

3:06cv1319 (TLM) (D. Conn. Mar. 30, 2012) ($485 per hour for David Rosen admitted 1969); Parriss v Pappas, 844 F. Supp. 2d 262, 265-66 (D. Conn. 2012) ($400 per hour, surveying cases); Cumulus Broadcasting v. Okesson, 2012 WL 3822019 *55 (D.Conn. 2012) (JCH) ($400 per hour); Bridgeport and Port Jefferson Steamboat Co. v. Bridgeport Port Authority, 2011 WL 721582 (D. Conn. 2011) ($425 per hour for attorneys with at least 31 years' experience); Muhammed v. Martoccio, Civil No. 3:06cv1137 (WWE) (D. Conn. Sept. 13, 2010) ($500 per hour for John Williams, admitted 1968); M.K. ex rel. K. v. Sergi, 578 F. Supp. 2d 425, 427 (D. Conn. 2008) ($375 per hour, surveying fee awards); Pappas v. Watson Wyatt & Co., 2008 WL 45385, at *3 (D. Conn. Jan. 2, 2008) ($400 per hour for a civil rights attorney with over twenty years of experience). Older cases approve awards in this district substantially higher than that approved by the District Court. Doe v. Bridgeport Police Dep't, 468 F.Supp.2d 333 (D.Conn.2006) ($375 per hour for attorneys who were developing expertise in the area of law involved in the lawsuit); Sony Electronics v. Soundview Technologies, Inc., 398 F. Supp. 2d 443, 448 (D. Conn. 2005) (awarding $400 per hour to attorney with 30 years' experience, and $325 per hour to attorney with nine years' experience); Stuart v. Stuart, 2005 WL590433, at *5 (Conn. Super. Feb. 10, 2005) (determining that $350 per hour for an experienced trial lawyer was "reasonable and in line with prevailing market rates in this area"); Conn. State Dep't of Soc. Servs. v.

<u>Thompson</u>, 242 F. Supp. 2d 127 (D. Conn. 2003) (awarding fees at the rates of $325/hour and $ 375/hour).

## SUMMARY OF ARGUMENT

The District Court significantly reduced Plaintiff's fees because it viewed Plaintiff's initial complaint as unintelligible and defective in that it supposedly did not fairly apprise Defendants of the basis for her claims. The Court also disallowed time Plaintiff's counsel spent drafting motions for summary judgment. Both of these reductions were in error.

Plaintiff's initial complaint fairly disclosed her claims to experienced debt collectors, and the record below evidenced that the Defendants possessed actual understanding of the claims. Plaintiff's initial complaint met the applicable test that the complaint contain a short and plain statement of the claim showing that the plaintiff was entitled to relief.

Plaintiff's initial complaint here asserted an FDCPA cause of action, and Plaintiff alleged the facts necessary to support the claim that (1) Plaintiff is a consumer, (2) Defendants are debt collectors, and (3) Defendants engaged in attempts to collect that violated the FDCPA.

In particular, Plaintiff alleged she had not been served with the small claims action. She alleged issuance of a writ that included a false date for a letter that was a predicate for small claims jurisdiction. She alleged that Defendants submitted

affidavits claiming knowledge of the underlying Chase account even though they had never communicated with Chase. She alleged that Defendants did not submit any factual basis for the pre- or post-judgment interest they requested.

The Complaint was plainly not unintelligible to the experienced debt buyer Defendants, whose actions disclosed they fully understood the legal import of the factual allegations in the Complaint. Defendants did *not* file a motion for more definite statement. Instead, Defendants acknowledged that they understood the complaint and filed a detailed Answer which included ten affirmative defenses.

Over the next months, the parties filed numerous briefs and pleadings set forth Plaintiff's claims and Defendants' defenses clearly indicating that the Defendants understood the issues in the case.

The District Court's fee orders leave the impression that there was significant litigation over the intelligibility of the Compliant. There was no litigation over "perceived inadequacies" in the Complaint. Defendants' early Motion for Judgment on the pleadings was largely based on res judicata, a defense that was bound to fail since the small claims ruling on which the Defendants relied did not address the FDCPA claims herein because they had not been raised in the small claims action.

The District Court's order dismissing the original Complaint was an error, and its reduction in the hours awarded Plaintiff on her attorney fee claim

compounded that error. The District Court, without any justification, struck all the hours related to the briefing on the Motion for Judgment on the Pleadings notwithstanding the fact that principal focus of the motion was on the Defendants' res judicata defense.

The District Court also erred in finding the time spent by Plaintiff on summary judgment motions. Given the Defendants' litigation posture in this case, seeking summary judgment on what were clear violations of the FDCPA was not improper in this case. The first summary judgment motion was filed after Plaintiff received the permission of the Court to file it in a telephone conference. It was appropriate for Plaintiff to seek summary judgment given Defendants' insistence on litigating this case. Before commencing drafting the motion in May of 2014, trial counsel's time records disclose seventeen separate attempts to settle this case. Under these circumstances, seeking summary judgment to expeditiously resolve liability under the FDCPA was certainly a reasonable choice. Whether a document is deceptive or misleading under the "least sophisticated consumer" standard is ordinarily a question of law for the Court, where a defendant has not conceded liability.

It was not necessary to await ruling on the Defendants' Motion for Judgment on the Pleadings before seeking summary judgment because the Defendants' res judicata defense was borderline frivolous. Second, to the extent that there was any

legitimate dispute about the intelligibility of the nature of the Plaintiff's claims, the very clear detailing of those claims in the summary judgment motions should have cleared up any issue in that regard.

The motions establish that the Defendants made numerous false statements under oath in connection with the collection of a consumer debt. Since the Defendants' only response to the arguments and motions was to finally settle the case, the time spent on the motion was reasonable.

* * * *

Plaintiff's fee motion set forth extensive justification for her request that counsel's fess be award at a rate of $400 per hour. In response, the Defendants offered no contrary evidence and conceded that a rate of $350 was appropriate. The District Court's reduction of the requested rate to $250 was an abuse of discretion.

Defendants submitted no evidence as to the reasonable hourly rate, even though it was their burden to produce specific evidence contradicting plaintiff's rate if they sought to set a lower rate. Instead, the Defendants conceded that than $350 an hour was reasonable. Indeed, Defendant Strumpf claimed a $500 hourly rate for run of the mill state court collection actions on behalf of defendant U.S. Equities as long ago as 2010. Because, the only basis in the record for a rate lower

than $400 is Defendants' concession that $350 was reasonable, the District Court had no grounds on which to set the $250 per hour rate.

The District Court's sole justification for using the $250 rate was its incorrect findings regarding the initial Complaint and summary judgment motions. Because these findings were clearly erroneous, they also cannot serve as a basis for reducing the hourly rate.

Extensive support exists for awarding the Plaintiff fees based on a $400 hourly rate. Such a rate is consistent with the rate currently being awarded Plaintiff's trial counsel in the district and currently being awarded other similarly experienced attorneys in the district.

* * * *

The District Court improperly reduced counsel's claimed hours for the time spent briefing summary judgment and for twice the time spent briefing the sufficiency of the initial Complaint. Thereafter, the Court reduced counsel's hourly rate – improperly concluding that counsel's conduct with respect to the summary judgment motions and the initial Complaint evidenced a supposed lack of competence justifying an hourly rate below the rate conceded as reasonable by the Defendants. The end result is that the Court essentially penalized counsel three times for the same allegedly improper acts. Even if the basis for the deductions

was correct, it was error to use that same basis for further deductions a second and, indeed, a third time.

The reductions for the time spent on the initial Complaint and the summary judgment motions was an abuse of discretion. But even assuming the initial deductions were proper – double and triple counting is not. Thus, having struck the time as allegedly unreasonable, it was abuse of discretion and reversible error to then again double the deduction and/or use the same reasoning to reduce the hourly rate.

Finally, the District Court's suggestion its rejection of Plaintiff's claimed fee was justified by the fact that the fee requested was a total of more than 12 times the amount that she recovered for her client should be rejected. There is no finding that Plaintiff's $3,000.00 recovery was anything less than complete success under the facts of this case. To the extent that the District Court reduced the fee to make it proportional to the recovery, it committed reversible error.

## ARGUMENT

In this case, the District Court made three errors. First, the District Court erred in reducing counsel's hours based on an allegedly deficient complaint and allegedly premature motion practice when the record established the Defendants understood the complaint. Second, the Court erred in reducing counsel's hourly rate to $250 per hour when the Defendants conceded that $350 was appropriate and

submitted no evidence in opposition to the affidavits filed by Plaintiff below. Finally, even assuming that deductions for Plaintiff's initial complaint were somehow appropriate, the District Court erred in reducing the hours by twice the hours claimed and then using the same facts to justify a lower attorney fee resulting in a triple deduction for the same allegedly deficient complaint.

## I.     APPLICABLE STANDARDS AND STANDARD OF REVIEW.

The FDCPA, §1692k(a)(3), provides that a defendant who fails to comply with *any* of its provisions "is liable" to the plaintiff for a "reasonable attorney's fee as determined by the court." "The whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery." Millea v. Metro-North R. Co., 658 F.3d 154, 169 (2d Cir. 2011).

Article III judges are accustomed to monetarily significant cases between corporate parties who can afford to pay their attorneys. FDCPA cases give the average citizen the same dignity and quality of justice as the rich, but have a wider public interest impact on many consumers because of the incentives embedded in the FDCPA for compliance.  Indeed, an award of fees is mandatory in FDCPA cases even if there had been no award of actual or statutory damages. Savino v. Computer Credit, 164 F.3d 81, 87 (2d Cir. 1998), citing Emanuel v.  American Credit Exchange, 870 F.2d 805, 809 (2d Cir.  1989); Pipiles v.  Credit Bureau of Lockport, 886 F.2d 22, 28 (2d Cir. 1989).

> Civil suits will deter abusive practices only if it is economically feasible for consumers to bring them. Unless consumers can recover attorneys fees it may not be possible for them to pursue small claims .... [U]nscrupulous collection agencies have little to fear from such suits if consumers must pay thousands of dollars in attorney fees to protect hundreds. Congress recognized this problem and specifically provided for the award of attorney fees to successful plaintiffs.

Venes v. Professional Service Bureau, Inc., 353 N.W.2d 671 (Minn. App. 1984). Thus, "[p]aying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." Tolentino v. Friedman, 46 F.3d 645, 651 (7th Cir. 1995) (George C. Pratt, C.J.).

In this case, Plaintiff requested fees based on a basic "lodestar calculation." The Supreme Court has cabined the lodestar determination to two factors: reasonable hourly rate and reasonable time expended. "[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." Perdue v. Kenny A., 559 U.S. 542, 552; *see also* Kroshnyi v. United States Pack Courier Servs., Inc., 771 F.3d 93, 108 (2d Cir.2014) ("the district court [should] begin its calculation [of reasonable attorneys' fees] by first performing a lodestar analysis, which calculates reasonable attorneys' fees by multiplying the reasonable hours expended on the action by a reasonable hourly rate"). **"[T]he lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively**

reasonable fee.'" Millea v. Metro–North R. Co., 658 F.3d 154, 166 (2d Cir.2011) (citing Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir.2008); see also Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 130 S.Ct. 1662, 1673 (2010)). The lodestar method of calculating fees, while not conclusive, is presumptively reasonable absent extraordinary circumstances. Millea, 658 F.3d at 166; Perdue, 130 S.Ct. at 1674.

In this case, the District Court did not attempt to deviate from the presumptive loadstar. While it cited the familiar twelve factors from U.S. Football League v. Nat'l Football League, 887 F.2d 408, 415 (2d Cir. 1989) and McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 415 (2d Cir. 2010), sometimes relevant when a court wishes to depart from the lodestar, see Kroshnyi, supra, the District Court made no specific findings regarding any of these factors.[49]

This Court reviews a district court's award of attorney's fees for abuse of discretion. Goldberger v. Integrated Res., Inc., 209 F.3d 43, 47-48 (2d Cir.2000). Abuse of discretion "occurs `when (1) [the court's] decision rests on an error of law (such as application of the wrong legal principle) or clearly erroneous factual finding, or (2) its decision — though not necessarily the product of a legal error or a clearly erroneous factual finding — cannot be located within the range of permissible decisions.'" Kickham Hanley P.C. v. Kodak Ret. Income Plan, 558

---

[49] JA:000536.

F.3d 204, 209 (2d Cir.2009) (quoting <u>Vincenty v. Bloomberg,</u> 476 F.3d 74, 83 (2d

Cir.2007)); <u>see also</u> <u>McDaniel v. Cnty. of Schenectady</u>, 595 F.3d 411, 415 (2d Cir.

2010) (applying above standard in statutory fee-shifting context).

## II.   THE DISTRICT COURT ERRED IN DISALLOWING TIME RELATING TO LITIGATION OVER PLAINTIFF'S INITIAL COMPLAINT AND TIME SPENT DRAFTING SUMMARY JUDGMENT MOTIONS.

The District Court significantly reduced Plaintiff's fees because it viewed

Plaintiff's initial complaint as "unintelligible and defective" in that it supposedly

"did not fairly apprise Defendants of the basis for her claims."[50]   The Court also

disallowed time Plaintiff's counsel spent drafting motions for summary judgment.

Both of these reductions were in error.

### A. Because Plaintiff's initial complaint fairly disclosed her claims to experienced debt collectors, and the record below evidenced that the Defendants possessed actual understanding of the claims, the District Court erred in dismissing the Complaint and disallowing the time spent litigating its sufficiency.

As the District Court recognized, a complaint must contain a short and plain

statement of the claim showing that the pleader is entitled to relief.   <u>Johnson v.

City of Shelby, Miss.</u>, 135 S. Ct. 346, 346 (2014) (party need only state "simply,

concisely, and directly events that, they alleged, entitled them to damages."), cited

in <u>Smith v. Campbell</u>, 782 F.3d 93, 99 (2d Cir. 2015) (need only recite the facts,

---

[50] JA:000536.

26

cannot dismiss for failure to cite statutory basis). "'The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters.'" Townsend v. Benjamin Enterprises, Inc., 679 F.3d 41, 57 (2d Cir. 2012) (citations omitted). Fed. R. Civ. P. 54(c) allows a judgment for the relief to which the party is entitled "even if the party has not demanded that relief in its pleadings."

A "claim," under Fed.R.Civ.P. 8, denotes "the aggregate of operative facts which give rise to a right enforceable in the courts." Acumen Re Mgmt. Corp. v. Gen. Sec. Nat. Ins. Co., 769 F.3d 135, 141 (2d Cir. 2014), citing Original Ballet Russe, Ltd. v. Ballet Theatre, Inc., 133 F.2d 187, 189 (2d Cir. 1943).

Plaintiff's initial complaint here asserted an FDCPA cause of action, which required Plaintiff to allege facts supporting that (1) Plaintiff is a consumer, (2) Defendants are debt collectors, and (3) Defendants engaged in attempts to collect that violated the FDCPA. Altman v. J.C. Christensen & Associates, Inc., 786 F.3d 191, 192, 194 (2d Cir. 2015); Hart v. FCI Lender Services, Inc., 797 F.3d 219, 227-28 (2d Cir. 2015).

The initial complaint here conformed to federal pleading standards. It stated the basis for the court's jurisdiction per Rule 8(a)(1): the Fair Debt Collection Practices Act ("FDCPA") and 15 U.S.C. §1692k. It included a demand for relief per Rule 8(a)(3): statutory and other damages. The Complaint also set forth the

factual basis for the three elements of an FDCPA cause of action: (1) the Plaintiff is a consumer (paragraphs 3, 6); (2) Defendants are debt collectors (paragraphs 4-6); (3) Defendants engaged in collection efforts that violated the FDCPA in connection with their small claims suit (paragraphs 7-21). Plaintiff alleged the aggregate of operative facts showing that defendants violated the FDCPA, 15 U.S.C. §1692e and §1692f(1), by false, deceptive, misleading or unfair statements in their small claims complaint, and the affidavits submitted therein.[51]

In particular, Plaintiff alleged she had not been served with the small claims action (sewer service). ¶¶ 9, 13. She alleged issuance of a writ that included a false date for a letter that was a predicate for small claims jurisdiction. ¶ 7. She alleged that Defendants submitted affidavits claiming knowledge of the underlying Chase account even though they had never communicated with Chase. ¶¶ 10-12, 14. She alleged that Defendants did not submit any factual basis for the pre- or post-judgment interest they requested. ¶15. She alleged that Defendants used generic Chase contracts unrelated to the plaintiff's account as a basis for their suit. ¶¶ 16-18. She alleged that Defendants requested attorney's fees even though the generic agreements did not allow an assignee to seek attorney's fees. ¶¶ 19, 21.

The Complaint was plainly not unintelligible to the experienced debt buyer Defendants, whose actions disclosed they fully understood the legal import of the

---

[51] JA:000009-12

.

factual allegations in the Complaint. Indeed, Defendant Strumpf is an attorney who boasts some thirty-five years' experience in compliance with the Fair Debt Collection Practices Act (FDCPA). She is not as incompetent or uncomprehending as Defendants made her out to be below. Thus, Defendants did *not* file a motion for more definite statement – the remedy for a supposedly unintelligible complaint. Instead, Defendants acknowledged that they understood the complaint and filed a detailed Answer which included ten affirmative defenses.[52]

Likewise, the parties conferred and filed a planning report to the Court following their Rule 26(f) meeting which occurred less than a week after Defendants' appearance in the case. As noted above, the Report plainly set forth Plaintiff's claims and Defendants' defenses clearly indicating that the Defendants understood the issues in the case.

As set forth above, on October 10, 2014, when the District Court ruled that the Complaint was unintelligible, it had the benefit of a summary discussion of the legal consequences of the factual claims by virtue of Plaintiff's prefiling letter dated May 14 and filed May 20, 2014. It also had a full narrative discussion of the violations in plaintiff's motion for summary judgment filed September 13, 2014. For example:

> In order to invoke small claims jurisdiction, defendant Moises, an
> employee of U.S. Equities, stated under oath that she had sent a letter

---

[52] JA:000013-18.

to plaintiff on "4/23/2010" when she had never sent a letter at all. In order to obtain judgment, she further stated under oath on the small claims complaint that Ms. Ferrari's obligation "totals $3,329.43 plus court costs, all of which the defendant has not paid although duly demanded." No one had demanded any such figure from Ms. Ferrari. The total "obligation" included prejudgment interest and attorney's fees that had not yet been awarded and could only be awarded by a court – and in fact were never awarded.[53]

The facts in the complaint were intelligible to the parties. The legal consequences were adequately pled. The District Court's findings to the contrary are clearly erroneous.

The District Court's fee orders leave the impression that there was significant litigation over the intelligibility of the Compliant. There was no litigation over "perceived inadequacies" in the Complaint. Defendants' early Motion for Judgment on the pleadings was largely based on res judicata. That defense was bound to fail since the small claims ruling on which the Defendants relied did not address the FDCPA claims herein because they had not been raised in the small claims action.[54] But defendants also squarely addressed – and correctly perceived – the legal ramifications of the facts alleged in the notice-pleading complaint: that defendants had made misrepresentations in the small claims suit and had improperly sought attorney's fees and pre- and post-judgment interest.

---

[53] JA:000177

[54] See infra, pp. 35-36.

The Defendants' motion for judgment on the pleadings filed July 9, 2013 itself sets forth accurately the nature of Plaintiff's claims.[55] Plaintiff also confirmed Defendants' perception of her legal claims in her Opposition to Judgment on the Pleadings.[56] Similarly, Defendants' Reply on the Motion for Judgment on the Pleadings again sets forth Plaintiff's claims accurately:

> "Plaintiff alleges that Defendants: (1) falsely claimed personal knowledge of Plaintiff's Chase debt in an affidavit the filed *in the state court lawsuit*, and could not authenticate documents attached to that affidavit; (2) sought to recover pre- and post-judgment interest and attorney's fees *in the state court lawsuit* without providing a factual basis for doing so; and (3) issued a small claims writ *in the state court lawsuit* stating that Moises had mailed a letter to Plaintiff outside the required time frame for communication with Plaintiff (i.e. within six months of the filing *of the state court lawsuit*)." [57]

Not until their opposition to Plaintiff's fee application did Defendants *first* claim that they "were left guessing as to the exact basis" for plaintiff's claims, taking improper advantage of the Court's comments in the dismissal order.[58] The record, including Defendants' own filings, reveals these allegations were not true.

The District Court's order dismissing the original Complaint was an error, and its reduction in the hours awarded Plaintiff on her attorney fee claim

---

[55] JA:000028.

[56] JA:000115.

[57] JA:000125.

[58] JA:000446.

compounded that error. The District Court struck all the hours related to the briefing on the Motion for Judgment on the Pleadings notwithstanding the fact that principal focus of the motion was on the Defendants' res judicata defense. The Defendants' pleadings and briefing consistently reveal their reliance on this defense. The Plaintiff was not free to ignore it, and the time spent responding to it was reasonable and should have been compensable regardless of the alleged incomprehensibility of the Complaint.

### B. The District Court erred in finding the time spent by Plaintiff on summary judgment motions unreasonable given Defendants' aggressive litigation of the case.

The District Court disallowed the time expended in filing two summary judgment motions. Given the Defendants' litigation posture in this case, seeking summary judgment on what were clear violations of the FDCPA was not improper in this case.

The first summary judgment motion was filed on September 13, 2014 after Plaintiff received the permission of the Court to file it in a telephone conference that was held on September 12, 2014.[59] While work on the motion was commenced prior to the conference, that work was necessary to properly complete the prefiling conference letter of May 20, 2014.[60] It was certainly proper for

---

[59] JA:538.

[60] JA:000174.

Plaintiff to draft the summary judgment motion before the prefiling conference letter so as to be able to draft the letter clearly, to be prepared to discuss it intelligently, and to file it promptly upon permission following the conference.

Furthermore, it was appropriate for Plaintiff to seek summary judgment given Defendants' insistence on litigating this case. Prior to commencing drafting the motion in May of 2014, trial counsel's time records disclose seventeen separate attempts to settle this case.[61] Under these circumstances, seeking summary judgment to expeditiously resolve liability under the FDCPA was certainly a reasonable choice.

A defendant has the right to use "Stalingrad defense" tactics, Lipsett v. Blanco, 975 F.2d 934, 941 (1st Cir. 1992), but such a strategy incurs associated costs when, as here, the defense ultimately fails. See, e.g., McGowan v. King, Inc., 661 F.2d 48, 51 (5th Cir. 1981) ("The [plaintiff's] counsel did not inflate this small [Truth in Lending] case into a large one; its protraction resulted from the stalwart defense. And although defendants are not required to yield an inch or to pay a dime not due, they may by militant resistance increase the exertions required of their opponent and thus, if unsuccessful, be required to bear that cost."). Here that cost is necessarily the full award of requested fees, because *defendants* ignored settlement offers (underscoring the need for plaintiff to prepare a dispositive

---

[61] JA:000441-442.

motion that successfully precipitated settlement), and it was *defendants* who chose the amount of resources expended.

The argument that no reasonable client would have approved a summary judgment motion in this case overlooks the nature of FDCPA litigation. Whether a document is deceptive or misleading under the "least sophisticated consumer" standard is ordinarily a question of law for the Court, where a defendant has not conceded liability. Schweizer v. Trans Union Corp., 136 F.3d 233, 237‑38 (2d Cir. 1998) (citing Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996) and Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62‑63 (2d Cir. 1993)). Accordingly, after some seventeen fruitless offers to settle over the course of a year, Ms. Ferrari's counsel began drafting her motion for summary judgment. Summary judgment motions are the customary way to present questions of law to the court. It is clear that Ms. Ferrari agreed with the strategy as she signed an affidavit in support of the motion.[62]

Contrary to the District Court's conclusion, it was not necessary to await ruling on the Defendants' Motion for Judgment on the Pleadings prior to seeking summary judgment. This is especially true when Plaintiff asked for and received permission to file the motion.

---

[62] JA:000189.

First, Defendants' res judicata defense was borderline frivolous. It is elementary that "For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the [small claims] judgment." Rodriguez v. Saucier, 108 Conn. App. 599, 602, 948 A.2d 1067, 1069 (2008) (citations omitted; internal quotation marks omitted.). Plaintiff did not file an answer or counterclaim in small claims court; she did not raise or litigate her FDCPA or CCPA claims in the small claims action. Whether Defendants' deceptive or unfair collection tactics violate those statutes was at issue in this case, and would have still been at issue despite the later entry of a small claims judgment of significantly less than the amount defendants attempted to collect. Stolicker v. Muller, Muller, Richmond, Harms, Myers & Sgroi, P.C., 387 F. Supp. 2d 752, 754-55 (W.D. Mich. 2005).

Similarly, the FDCPA and CCPA claims were not compulsory counterclaims. They arose out of an entirely different transaction. Plaintiff was not precluded from bringing them before the federal court in this action under long-standing and well-established case law. Azar v. Hayter, 874 F.Supp. 1315, 1317 (N.D. Fla. 1995) (An FDCPA claim concerns the method of collecting the debt. It does not arise out of the transaction creating the debt, and thus was not a compulsory counterclaim under state law in the action to collect the debt."); see

also <u>Foster v. D.B.S. Collection Agency</u>, 463 F.Supp.2d 783 (S.D. Ohio 2006) ("Plaintiffs, in this case, are not challenging the amounts they owed to their creditors, which would implicate claim preclusion, but rather challenge the capacity of Defendants to bring debt collection lawsuits against them and the practices Defendants employed when they attempted to collect those debts.").

FDCPA and CCPA claims do not arise out of the transaction creating the debt and are not precluded. The claims were not raised or litigated in the small claims court. Thus, the principal aspect of Defendants' motion was clearly meritless. Notably, Defendants did not refile this motion after the filing of the Amended Complaint. Instead, having seen Plaintiff's res judicata briefing on the motion for judgment on the pleadings the merits briefing on the summary judgment motions, and the Amended Complaint, the Defendants chose to settle the case.[63]

Second, to the extent that there was any legitimate dispute about the intelligibility of the nature of the Plaintiff's claims, the very clear detailing of those claims in the summary judgment motions should have cleared up any issue in that regard. A fully briefed summary judgment motion setting forth actual admissible evidence certainly is sufficient to establish an entitlement to relief above the

---

[63] JA:000410.

speculative level applicable at the pleading stage. Cf. Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 70 (2d Cir. 2014).

It is clear that the Plaintiff was entitled to summary judgment. The motions establish that the Defendants made numerous false statements under oath in connection with the collection of a consumer debt. The legal basis for that argument, which will not be repeated here, is contained in the record,[64] but since the Defendants' only response to the arguments and motions was to finally settle the case, the time spent on the motion was therefore reasonable. Under these circumstances, exclusion of this time was a clearly erroneous reversible error.

### III. THE DISTRICT COURT ERRED IN REDUCING COUNSEL'S HOURLY RATE FROM $400 TO $250 PER HOUR WHEN DEFENDANTS CONCEDED THAT $350 WAS APPROPRIATE AND SUBMITTED NO EVIDENCE IN OPPOSITION TO THE AFFIDAVIT FILED BY PLAINTIFF BELOW.

Plaintiff's fee motion set forth extensive justification for her request that counsel's fess be award at a rate of $400 per hour. In response, the Defendants offered no contrary evidence and conceded that a rate of $350 was appropriate. The District Court's reduction of the requested rate to $250 was an abuse of discretion.

Where as here the Plaintiff is seeking rates based on the prevailing rate in the same community where the district court sits, the test is a simple one. Arbor

---

[64] JA:000176-182.

Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd.

of Elections, 522 F.3d 182, 183 (2d Cir. 2008) ("the district court should generally

use the prevailing hourly rate in the district where it sits").  As this Court has

explained:

> Calculation of the lodestar also requires the court to determine the "prevailing market rates" for the type of services rendered, *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984), *i.e.,* the "fees that would be charged for similar work by attorneys of like skill in the area," *Cohen v. West Haven Board of Police Commissioners,* 638 F.2d 496, 506 (2d Cir.1980); *see generally In re Continental Illinois Securities Litigation,* 962 F.2d 566, 568 (7th Cir.1992) (district court must "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order").

Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 98 (2d Cir. 1997).

Defendants submitted no evidence as to the reasonable hourly rate, even

though it was their burden to produce specific evidence contradicting plaintiff's

rate if they sought to set a lower rate.  United States Football League v. National

Football League, 887 F.2d 408, 413 (2d Cir.1989). Instead, the Defendants

conceded that than $350 an hour was reasonable.  Indeed, Defendant Strumpf

claimed a $500 hourly rate for run of the mill state court collection actions on

behalf of defendant U.S. Equities as long ago as 2010.[65]

Thus, the only basis in the record for a rate lower than $400 is Defendants'

concession that $350 was reasonable. Thus, the District Court had no grounds on

---

[65] JA:000579.

which to set the $250 per hour rate. <u>Washington v. Philadelphia County Court of Common Pleas,</u> 89 F.3d 1031, 1036 (3d Cir.1996) ("Where, as here, the plaintiff has met his prima facie burden under the 'community market rate' lodestar test, and the opposing party has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward."). In <u>Orchano</u>, this Court overturned a similar conclusory reduction to Ms. Faulkner's rates, favorably commenting on her experience reputation, ability, and service to both courts and bar groups in various advisory and educational capacities. <u>Orchano v. Advanced Recovery, Inc.</u>, 107 F.3d 94, 100 (2d Cir. 1997).

The District Court's sole justification for using the $250 rate was its incorrect findings regarding the initial Complaint and summary judgment motions. Because these findings were clearly erroneous, they also cannot serve as a basis for reducing the hourly rate.

As noted above, extensive support exists for awarding the Plaintiff fees based on a $400 hourly rate. Such a rate is consistent with the rate currently being awarded Plaintiff's trial counsel in the district and currently being awarded other similarly experienced attorneys in the district. The District Court made no finding to the contrary. Counsel's skills are such that she has a national reputation as a consumer lawyer – particular with respect to FDCPA claims. She has decades of experience in this practice area. She regularly writes for, teaches, and mentors

other attorneys practicing in this area. Notwithstanding the District Court's conclusory and incorrect analysis, the conclusion that Ms. Faulkner is a "highly competent" FDCPA attorney is, if anything, an understatement. Her record in this case and others render the District Court's suggestions to the contrary clearly erroneous.

### IV. THE DISTRICT COURT ERRED IN REDUCING COUNSEL'S HOURS BY TWICE THE HOURS CLAIMED AND THEN USING THE SAME FACTS TO JUSTIFY A LOWER ATTORNEY FEE RESULTING IN A TRIPLE DEDUCTION FOR THE SAME ALLEGEDLY IMPROPER CONDUCT.

As noted above, the District Court improperly reduced counsel's claimed hours for the time spent briefing summary judgment and for twice the time spent briefing the sufficiency of the initial Complaint. Thereafter, the Court reduced counsel's hourly rate – improperly concluding that counsel's conduct with respect to the summary judgment motions and the initial Complaint evidenced a supposed lack of competence justifying an hourly rate below the rate conceded as reasonable by the Defendants. The end result is that the Court essentially penalized counsel three times for the same allegedly improper acts. Even if the basis for the deductions was correct, it was error to use that same basis for further deductions a second and, indeed, a third time.

Initially, it is important to remember the goals of fee shifting are "not limited to those cases that push the legal envelope"; instead, the public policy underlying

fee "is perhaps most meaningfully served by the day-to-day private enforcement of these rights, which secures compliance and deters future violations." Quaratino v. Tiffany & Co., 166 F.3d 422, 426 (2d Cir. 1999). While the FDCPA provides for fee-shifting as a matter of course *to* successful plaintiffs, 15 U.S.C. § 1692k(a)(3), gives the district court the power to award fees *against* plaintiffs only upon "a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment." Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 95-96 (2d Cir. 2008) (quoting § 1692k(a)(3)). In this case, no finding of bad faith was made by the District Court.

The District Court cited no precedent for its conclusion that it was appropriate to reduce the hours spent in litigation regarding the sufficiency of the initial complaint by the double the time expended by Plaintiff's counsel to account for the time spent by the Defendants making the motion. The result shifted amounts recoverable by the Plaintiff -- for what would have been time reasonably incurred -- to the Defendants. Thus, in essence the Defendants were granted a partial award of attorney fees that acted as a setoff to a portion of the award to Plaintiff that was otherwise determined to be reasonable. Such a determination is unprecedented and, in the absence of a finding of bad faith and intention to harass was clearly improper under 15 U.S.C. § 1692k(a)(3).

But, the District Court was not content to improperly punish Plaintiff only twice for the alleged transgression of the supposedly unintelligible complaint. It used the filing of the Complaint (and the drafting of the summary judgment motions) as justification for reducing the applicable hourly rate to $250 when Defendants conceded $350 was appropriate. This double and triple counting was also error:

> Here, the district court reduced the reasonable hourly rate from $300 to $75 an hour, the paralegal rate, for 275.2 hours spent summarizing depositions, based on its conclusion that summarizing depositions was simple enough for a paralegal to perform. But the district court then used the simplicity of summarizing depositions to justify its reduction in the reasonable hourly rate for the remainder of the case from $300 to $250 an hour. Thus, the district court double counted its reduction for summarizing depositions: Each hour spent summarizing depositions was already reduced to $75 an hour, so there was no reason to reduce the overall rate. The district court may properly use the simplicity of a given task as justification for a reduction in the rate for the hours spent performing that task or as justification for a reduction in the overall rate, but not both.

Moreno v. City of Sacramento, 534 F.3d 1106, 1115-16 (9th Cir. 2008); see also Cunningham v. County of Los Angeles, 879 F.2d 481, 489 (9th Cir.1988) (error to reduce requested attorney's fee twice—once for unsuccessful claims, and again if the final award reflects only partial success).

As noted above, the reductions for the time spent on the initial Complaint and the summary judgment motions was an abuse of discretion. But even assuming the initial deductions were proper – double and triple counting is not.

42

Thus, having struck the time as allegedly unreasonable, it was abuse of discretion and reversible error to then again double the deduction and/or use the same reasoning to reduce the hourly rate.

Finally, the District Court seems to suggest at the that its rejection of Plaintiff's claimed fee was justified by the fact that the fee requested was "a total of more than 12 times the amount that she recovered for her client" and the fee awarded was still "more than four times the amount that counsel obtained for her client"[66]   It is unclear what significance these statement are meant to have beyond mere observations.   There is no finding that Plaintiff's $3,000.00 recovery was anything less than complete recovery under the facts of this case. *Cf.*   Doyle v. Midland Credit Mgmt., Inc., 722 F.3d 78, 80 (2d Cir. 2013) (offer of judgment in the amount of $1,001 in addition to coverage of reasonable attorney's fees and costs mooted claim because it provided plaintiff complete relief).   To the extent that the District Court is reducing the fee to make it proportional to the recovery, this would be clear reversible error. Kassim v. City of Schenectady, 415 F.3d 246, 252 (2d Cir. 2005) ("If the district court reduced the fee in the belief that the claimed hours were simply disproportionate in a case involving a $2500 injury, without regard to the reasonableness of the attorney's expenditure of time in responding to the particular circumstances, this was error."); see also Millea, 658

---

[66] JA:000535, JA:000540.

F.3d at 169 ("The whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery.").

## CONCLUSION

The District Court's reduction in its award of fees was an abuse of discretion. This Court should reverse that determination and remand the case with instructions to award Plaintiff the sum of $36,284 in attorney fees along with her costs and fees in prosecuting this appeal.

Respectfully submitted,


/s/ Anthony J. Majestro
Anthony J. Majestro (WVSB 5165)
Powell & Majestro, PLLC
405 Capitol Street, Suite P1200
Charleston, WV 25301
Phone: 304-346-2889
Facsimile: 304-346-2895
amajestro@powellmajestro.com

Counsel for Appellant, Liz Ferrari

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,509 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac, Version 15.19 in 14-point font size in Times New Roman.

/s/ Anthony J. Majestro
Anthony J. Majestro (WVSB 5165)

## CERTIFICATE OF SERVICE

I certify that on February 22, 2016, the foregoing Appellant's Brief was served on all parties or their counsel through the CM/ECF system.

/s/ Anthony J. Majestro
Anthony J. Majestro (WVSB 5165)