# 15-3573-cv

*To Be Argued By:*
JAMES F. SULLIVAN

## IN THE
## United States Court of Appeals
### FOR THE SECOND CIRCUIT

---

**LIZ FERRARI,**
*Plaintiff-Appellant,*

v.

**U.S. EQUITIES CORP.,**
**LINDA STRUMPF, and**
**OLGA MOISES,**
*Defendants-Appellees.*

---

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF CONNECTICUT

===

### BRIEF OF DEFENDANTS-APPELLEES

===

James F. Sullivan
Howard Kohn Sprague & Fitzgerald, LLP
237 Buckingham Street
Hartford, CT 06126-1798
(860) 525-3101
jfs@hksflaw.com

Attorney for Defendants-Appellees

Dated: April 26, 2016

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellees Linda Strumpf, Esq., and Olga Moises state that that they are natural persons and not corporations. U.S. Equities Corp. states that it has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................... i

TABLE OF CONTENTS ........................................................................................ ii

TABLE OF AUTHORITIES ................................................................................... v

STATEMENT OF THE ISSUES ............................................................................. 1

STATEMENT OF THE CASE ................................................................................ 3

SUMMARY OF ARGUMENT .............................................................................. 9

ARGUMENT ........................................................................................................ 12

I.  Legal Standard and Standard of Review .................................................. 12

    A.  The Fair Debt Collection Practices Act ("FDCPA") Provides for an Award of Reasonable Attorneys' Fees to the Prevailing Plaintiff ........................................................................................ 12

    B.  The District Court Must Calculate a Fee That a "Reasonable, Paying Client Would Be Willing to Pay." .................................... 13

        1.  The district court must determine a reasonable number of hours that were "required by the case." ............................ 15

        2.  The district court must determine the hourly rate "a paying client would be willing to pay." ....................................... 16

        3.  The district court must account for "case-specific factors" in adjusting the presumptively reasonable fee upward or downward ....................................................................... 16

    C.  This Court Reviews the District Court's Determination of Ferrari's Reasonable Attorneys' Fees for an Abuse of Discretion .......... 18

II.  The District Court Properly Reduced Faulkner's Compensable Hours By Excluding Time She Billed For Drafting The Initial, Deficient Complaint And Litigating Its Sufficiency, And By Excluding Time Faulkner Billed For Preparing The Premature, Unnecessary Motions For Summary Judgment. ................................................................................................. 20

    A.  The Initial Complaint Was Clearly Deficient Under Federal Rule of Civil Procedure 8 and Was Properly Dismissed Pursuant to Rule 12 .................................................................................... 21

        1.  Rule 8 requires a short and plain statement of the claim showing the plaintiff is entitled to relief and a demand for that relief ................................................................... 21

2.      Rule 12(c) allows a party to move for judgment as a matter of law after the pleadings have closed on the grounds that the complaint does not state a cognizable claim for relief............ 21

3.      The complaint's "mass of factual allegations" and "laundry list" of statutory provisions did not give Defendants fair notice of Ferrari's claims and did not contain sufficient facts for the court to draw the reasonable inference that Defendants were liable for the misconduct alleged...................... 23

B.      Both Summary Judgment Motions Were Filed Prematurely, and the District Court Properly Reduced Faulkner's Time Spent Preparing Them ............................................................................ 32

1.      The first summary judgment motion was filed prematurely and the time Faulkner spent drafting it was not "reasonably expended." ..................................................................................... 32

2.      The time billed for the renewed summary judgment motion was not reasonable, because the motion was filed prematurely and without leave of court .......................................... 35

C.      No Reasonable, Paying Client Would Pay for Faulkner's Time Spent Drafting the Initial Complaint and Litigating Its Sufficiency, or for Faulkner's Time Spent Preparing the Summary Judgment Motions While a Rule 12 Motion Was Still Pending, Because None of That Time Was Required by the Case ........................................ 35

III.      The District Court Properly Reduced Faulkner's Hourly Rate From $400 Per Hour To $250 Per Hour. ................................................................ 40

A.      Though Experienced and Accomplished Within the Consumers' Bar, Faulkner Did Not Provide "Quality" Representation in This Case ........................................................................................................ 41

1.      Faulkner's citation of the "undesirability" and "nature of the professional relationship" factors does not support her request for a $400 hourly rate............................................ 42

2.      Because Faulkner did not provide quality legal representation in this case, the district court acted within its discretion in reducing her hourly rate.............................................. 43

B.      A Paying Client Would Demand a Reduction in Faulkner's Hourly Rate, and the District Court's Decision to So Reduce Faulkner's Rate Was Therefore Within Its Discretion ................................................ 47

IV.     The District Court Correctly Calculated The Fee Award And Did Not
        "Double Count" Any Reductions.................................................................. 48

**CONCLUSION** ................................................................................................ 52

**CERTIFICATE OF COMPLIANCE WITH RULE 32(A)**................................. 54

**CERTIFICATE OF SERVICE** ..................................................................... 55

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adorno v. Port Authority of New York and New Jersey*,
  685 F.Supp.2d 507 (S.D.N.Y. 2010) .......................................................................... 14

*In re Agent Orange Product Liability Litigation*,
  818 F.2d 226 (2d Cir. 1987) ..................................................................................... 47

*Anderson News, L.L.C. v. American Media, Inc.*,
  680 F.3d 162 (2d Cir. 2012) ..................................................................................... 22

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and
  Albany County Bd. of Elections*,
  493 F.3d 110 (2d Cir. 2007) *amended on other grounds* at 522 F.3d 182
  (2d Cir. 2007) ....................................................................................................*passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................22, 23, 24

*Atuahene v. City of Hartford*,
  10 Fed. Appx. 33 (2d Cir. 2001) ............................................................................. 25, 26

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..........................................................................................22, 23, 24

*Blanchard v. Bergeron*,
  489 U.S. 87 (1989) .................................................................................................... 17

*Bliven v. Hunt*,
  579 F.3d 204 (2d Cir. 2009) ................................................................................... 15, 48

*In re Bolar Pharm. Co. Sec. Litig.*,
  966 F.2d 731 (2d Cir. 1992) (*per curiam*) ............................................................. 19, 48

*Burnett v. Carothers*,
  192 F.3d 52 (2d Cir. 1999) ....................................................................................... 32

*City of Riverside v. Rivera*,
  477 U.S. 561 (1986) ................................................................................................ 18, 19

*Copeland v. Marshall,*
641 F.2d 880 (1980) (*en banc*) ............................................................... 15

*Cortec Industries, Inc. v. Sum Holding L.P.,*
949 F.2d 42 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992) ................................ 29, 30

*Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers,*
34 F.3d 1148 (2d Cir. 1994) ............................................................. 35

*Cunningham v. County of Los Angeles,*
879 F.2d 481 (9th Cir. 1988) ............................................................. 50

*Davis v. City and County of San Francisco,*
976 F.3d 1536 (9th Cir. 1992) *vacated in part at* 984 F.2d 345 (9th Cir. 1993) ............................................................. 35

*Emanuel v. American Credit Exch.,*
870 F.2d 805 (2d Cir. 1989) ............................................................. 12

*Faraci v. Hickey-Freeman Co., Inc.,*
607 F.2d 1025 (2d Cir. 1979) ............................................................. 12, 41, 49

*Federal Home Loan Mortg. Corp. v. Lamar,*
503 F.3d 504 (6th Cir. 2007) ............................................................. 42

*Goldberger v. Integrated Res. Inc.,*
209 F.3d 43 (2d Cir. 2000) ............................................................. *passim*

*Grand Light & Supply Co. v. Honeywell, Inc.,*
No. N78-342 (D. Conn. July 13, 1984), *rev'd*, 771 F.2d 672 (2d Cir. 1985) ............................................................. 27

*Hayden v. Paterson,*
594 F.3d 150 (2d Cir. 2010) ............................................................. 29, 30

*Hensley v. Eckerhart,*
461 U.S. 424 (1983) ............................................................. *passim*

*Herman v. Davis Acoustical Corp.,*
196 F.3d 354 (2d Cir. 1999) ............................................................. 18

*Jacobson v. Healthcare Financial Services, Inc.,*
434 F.Supp.2d 133 (E.D.N.Y. 2006), *affirmed in part, vacated in part by* 516 F.3d 85 (2d Cir. 2008) ............................................................. 42

*Johnson v. Georgia Highway Express, Inc.,*
  488 F.2d 714 (5th Cir. 1974) ...............................................................*passim*

*Johnson v. Rowley,*
  569 F.3d 40 (2d Cir. 2009) ........................................................................ 29

*Kimmel v. Phelan Hallinan & Schmieg, PC,*
  847 F.Supp.2d 753 (E.D. Pa. 2012) ......................................................... 24

*Kirsch v. Fleet Street, Ltd.,*
  148 F.3d 149 (2d Cir. 1998) ..........................................................15, 18, 20

*Kopec v. Coughlin,*
  922 F.2d 152 (2d Cir. 1991) ...................................................................... 30

*Korzeniowksi v. NCO Financial Systems,*
  No. 3:09-cv-1399 (WWE), 2010 WL 466162 (D. Conn. Feb. 8, 2010) ................. 23

*L-7 Designs, Inc. v. Old Navy, LLC,*
  647 F.3d 419 (2d Cir. 2011) ................................................................22, 30

*LaBounty v. Adler,*
  933 F.2d 121 (2d Cir. 1991) ...................................................................... 30

*Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard
  Sanitary Corp.*
  540 F.2d 102 (3d Cir. 1976) ...................................................................... 19

*Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,*
  487 F.2d 161 (3d Cir. 1973), *modified on other grounds at* 540 F.2d 102
  (1976) ...................................................................................................... 12

*Lunday v. City of Albany,*
  42 F.3d 131 (2d Cir. 1994) ........................................................................ 15

*McDaniel v. County of Schenectady,*
  595 F.3d 411 (2d Cir. 2010) ...............................................................*passim*

*McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust
  Fund,*
  450 F.3d 91 (2d Cir. 2006) ..................................................................16, 46

*Millea v. Metro-North R. Co.,*
  658 F.3d 154 (2d Cir. 2011) ...............................................13, 14, 15, 36

*Miller v. Midpoint Resolution Group, LLC,*
608 F.Supp.2d 389 (W.D.N.Y. 2009) .......................................................... 45

*Moreno v. City of Sacramento,*
534 F.3d 1106 (9th Cir. 2008) .............................................................. 49, 50

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.,*
N0. 12-cv-2837, 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012), *aff'd*, 530
Fed. Appx. 19 (2d Cir. 2013) ............................................................... 25, 26

*Orchano v. Advanced Recovery, Inc.,*
107 F.3d 94 (2d Cir. 1997) ...................................................................... 13

*Pappenfuss v. Receivable Management Services Corporation,*
No. 13-cv-175, 2013 WL 5427891 (E.D. Wis. Sep. 26, 2013) ................... 41

*Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air,*
478 U.S. 546 (1986), *rev'd after rehearing on other grounds*, 483 U.S. 711
(1987) ..................................................................................... 16, 41, 43, 49

*Perdue v. Kenny A. ex rel. Winn,*
559 U.S. 542 (2010) .........................................................................*passim*

*Pipiles v. Credit Bureau of Lockport, Inc.,*
886 F.2d 22 (2d Cir. 1989) ...................................................................... 12

*Roberts v. Babkiewicz,*
582 F.3d 418 (2d Cir. 2009) .................................................................... 22

*Ruiz v. Maidenbaum & Associates P.L.L.C.,*
No. 12-cv-5044-RJS, 2013 WL 3957742 (S.D.N.Y. Aug. 1, 2013) ........... 41

*Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,*
748 F.2d 774 (2d Cir. 1984) .................................................................... 29

*Salahuddin v. Cuomo,*
861 F.2d 40 (2d Cir. 1988) ...................................................................... 24

*Savino v. Computer Credit, Inc.,*
164 F.3d 81 (2d Cir. 1998) ...................................................................... 12

*Scott v. City of New York,*
626 F.3d 130 (2d Cir. 2010) .................................................... 18, 19, 20, 44

*Seigal v. Merrick,*
    619 F.2d 160 (2d Cir. 1980) ................................................................... 19

*Simmons v. New York City Transit Authority,*
    575 F.3d 170 (2d Cir. 2009) ............................................................. 15, 36

*Sorisio v. Lenox, Inc.,*
    701 F.Supp. 950 (D. Conn. 1988) *aff'd at* 863 F.2d 195 (2d Cir. 1988) ................... 27

*Thomas v. ARS National Services, Inc.,*
    No. 15-cv-3635 (D.N.J. May 29, 2015) ....................................................... 42

*Thomas v. Capital Management Services, L.P.,*
    No. 15-cv-5084 (D.N.J. July 2, 2015) ......................................................... 42

*Thomas v. Diversified Recovery Solutions, LLC et al,*
    No. 15-cv-4063 (D.N.J. June 15, 2015) ....................................................... 42

*Thomas v. Global Credit & Collections Corp., et al,*
    No. 16-cv-672 (D.N.J. Feb. 8, 2016) ......................................................... 42

*Thomas v. LTD Financial Services, L.P.,*
    No. 15-cv-5474 (D.N.J. July 10, 2015) ....................................................... 42

*Thomas v. NCB Management Services, Inc.,*
    No. 15-cv-5189 (D.N.J. July 2, 2015) ......................................................... 42

*Tito v. Rubin & Rothman, LLC,*
    No. 12-cv-3464, 2014 WL 1092845 (E.D.N.Y. Mar. 18, 2014) ............................... 46

*U.S. Football League v. National Football League,*
    887 F.2d 408 (2d Cir. 1989) ............................................................*passim*

*U.S. Media Corp., Inc. v. Edde Entertainment, Inc.,*
    No. 94-cv-4849 (MHD), 1999 WL 498216 (S.D.N.Y. July 14, 1999) ..................... 46

*Washington v. Philadelphia County Court of Common Pleas,*
    89 F.3d 1031 (3d Cir. 1996) ................................................................. 46

**Statutes**

Connecticut Creditors' Collection Practices Act ........................................... 5, 28

Connecticut Unfair Trade Practices Act ................................................ 5, 23, 27

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ......................................*passim*

**Other Authorities**

District of Connecticut Local Rule 7 ................................................................................... 5

Fed. R. Civ. P. 8 ...............................................................................................................*passim*

Fed. R. Civ. P. 12 .............................................................................................................*passim*

Fed. R. Evid. 201 ............................................................................................................... 5

# STATEMENT OF THE ISSUES

**I.**     Did the district court abuse its considerable discretion by reducing the number of hours for which Appellant's counsel could be compensated, pursuant to 15 U.S.C. § 1692k(a)(3), where Appellant's counsel filed a complaint that was "largely unintelligible" and was accordingly dismissed, and twice filed premature motions for summary judgment before the trial court had an opportunity to rule on Appellees' pending motion for judgment on the pleadings or before Appellees had an opportunity to answer the amended complaint?

**II.**     Did the district court abuse its considerable discretion by reducing the hourly rate at which Appellant's counsel could be compensated, pursuant to 15 U.S.C. § 1692k(a)(3), where Appellant's counsel displayed neither competence nor quality advocacy in litigating the case?

**III.**     Did the district court abuse its considerable discretion by utilizing the presumptively reasonable fee method to calculate a reasonable fee award, first reducing Appellant's counsel's number of compensable hours for time spent litigating the sufficiency of the "largely unintelligible" complaint and premature motions for summary judgment, and then multiplying those hours by an hourly

rate reduced to reflect Appellant's counsel's lack of competence and quality of advocacy in litigating the case?

# STATEMENT OF THE CASE

On October 22, 2015, the United States District Court for the District of Connecticut granted, in part, the fee application of attorney Joanne S. Faulkner ("Faulkner"), who represented the Appellant, Liz Ferrari ("Ferrari"), in an action brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* *See* Joint Appendix[1] at 000007 and 000535. As the prevailing party in the district court action, Ferrari sought an award of her attorneys' fees under the fee-shifting provision of the FDCPA. JA:000007; 15 U.S.C. § 1692k(a)(3). Faulkner presented a fee application and affidavit indicating that she expended 90.71 hours litigating the case and requesting that she be compensated for that time at an hourly rate of $400, for a total fee request of $36,284. JA:000411; JA:000435; JA:000443.

The district court reviewed Faulkner's application and determined that $12,690 was a reasonable attorneys' fee for Faulkner's representation of Ferrari, because only 50.76 of Faulkner's claimed hours were reasonably expended and because no "real-world client would be willing to pay more than $250 per hour for the quality of services performed by [Faulkner] in this case." JA:000539. Ferrari subsequently

---

[1] Ferrari cites to the Joint Appendix as "JA:000000." Appellees U.S. Equities Corp., Linda Strumpf, and Olga Moises utilize the same convention for consistency. Ferrari did not consult with Appellees in compiling, or prior to filing, the "Joint Appendix." Appellees believe the "Joint Appendix" to be unnecessarily large. Notwithstanding, Appellees also believe that the "Joint Appendix" contains the materials necessary to support affirmation of the district court, which portions of the "Joint Appendix" are cited herein.

moved for reconsideration of the October 22, 2015, order. JA:000007; JA:000541. The district court denied Ferrari's motion on November 4, 2015. JA:000007.

Ferrari appeals from those orders, as well as the district court's October 14, 2014, order dismissing Ferrari's initial complaint without prejudice, "to the extent it served as a basis for [sic] forgoing fee orders." JA:000586; Appellant's Memo. p. 3.

## A.     The Parties and the State Court Action

Ferrari is a resident of Connecticut who claims to be a "consumer," as that term is defined by the FDCPA at 15 U.S.C. § 1692a(3). JA:000009; JA000402. U.S. Equities Corp. ("U.S. Equities") purchases defaulted accounts and attempts to collect them. JA:000009; JA:000014. Linda Strumpf ("Strumpf") is an attorney and member of the Connecticut bar who concentrates her practice in collection law. JA:000009; JA:000013; JA:000079; JA:000524. Moises is an employee of U.S. Equities who "at times…submits affidavits…in lawsuits brought by Equities to obtain court judgments against debtors." JA:000014.

Ferrari had a credit card account with Chase Bank, U.S.A. on which she incurred charges that she failed to repay. JA:000064; JA:000072; JA:000088-000105. U.S. Equities purchased the debt Ferrari owed to Chase Bank, U.S.A. JA:000064; JA:000068; JA:000072-000078. Strumpf represented U.S. Equities in a lawsuit filed against Ferrari on June 18, 2012, in the small claims division of the Connecticut Superior Court ("State Court Action"). JA:000061; JA:000079. Moises prepared and executed documents in support of U.S. Equities' State Court Action against Ferrari,

including the small claims writ and notice of suit, as well as the affidavit of debt and affidavit requesting pre-judgment and post-judgment interest.  JA:000064; JA:000072.

The small claims court awarded judgment to U.S. Equities against Ferrari in the State Court Action on July 24, 2012.  JA:000061.

### B. Ferrari's Initial Complaint, the Ensuing Litigation Concerning the Initial Complaint's Deficiencies, and the Parties' Discovery Disputes

On March 22, 2013, Ferrari filed a complaint in the U.S. District Court for the District of Connecticut against U.S. Equities, Strumpf, and Moises (collectively "Defendants"), alleging violations of the FDCPA, Connecticut Unfair Trade Practices Act ("CUTPA"), and the Connecticut Creditors' Collection Practices Act ("CCPA") related to Defendants' conduct in the State Court Action. JA:000002; JA:000009. On May 22, 2013, Defendants interposed a joint answer to Ferrari's complaint, in which they denied any wrongdoing regarding the State Court Action. JA:000002; JA:000013.

After they answered the complaint, Defendants moved for judgment on the pleadings on the district court on July 9, 2013, pursuant to Fed. R. Civ. P.12(c). JA:000003; JA:0000028.  Defendants also brought a motion for judicial notice, in conjunction with their Rule 12(c) motion, asking the district court, pursuant to Fed. R. Evidence 201 and District of Connecticut Local Rule 7, to consider records of the State Court Action referenced in—but not attached to—Ferrari's complaint. JA:000003; JA:000057.  Despite the fact that those records were central to her claims, Ferrari opposed Defendants' motion for judicial notice.  JA:000003; JA:000110.

On July 12, 2013, Defendants moved for a protective order concerning

Ferrari's initial discovery requests, which the district court denied on July 29, 2013.

JA:000003. Then, on December 27, 2013, Ferrari brought a motion to compel

responses to her second set of discovery requests. JA:000004; JA:000133. The

district court denied Ferrari's motion to compel on January 28, 2014. JA:000004;

JA:000172. In later analyzing Faulkner's fee application the district court stated that,

although Ferrari's "allegedly overly aggressive approach to discovery…is a somewhat

close issue in my mind, I am not convinced that fees for discovery were

unreasonable." JA:000539.

### C. Ferrari's First Motion For Summary Judgment and the Court's Dismissal of Ferrari's Initial Complaint

In a joint status report the parties filed with the district court on January 13,

2014, Ferrari requested a pretrial conference concerning her potentially filing a motion

for summary judgment. JA:000004. The district court directed Ferrari to file a letter

requesting such conference, which Ferrari eventually did on May 20, 2014. JA:000004-

000005; JA:000174. The district court granted Ferrari permission to file a motion for

summary judgment during a teleconference held on September 12, 2014. JA:000005;

JA:000538.

Despite the fact that the district court had not yet ruled on Defendants'

pending motion for judgment on the pleadings, Ferrari filed the very next day a

motion for summary judgment with respect to Moises' alleged liability under the

FDCPA. JA:000005; JA:000175. The district court granted Defendants' motion for judgment on the pleadings, in part, on October 14, 2014, dismissing Ferrari's complaint without prejudice to her refiling on or before November 14, 2014. JA:000005; JA:000393. In its order dismissing Ferrari's initial complaint, the district court described the pleading as "a stream-of-consciousness-style complaint that falls well below an acceptable standard of clarity," "baffling," "convoluted," and "a jumble of factual allegations that are far from clear how they relate—if at all—to one another." JA:000393; JA:000395-000396. Because it dismissed Ferrari's initial complaint, the district court also denied, as moot, her premature, unnecessary motion for summary judgment. JA:000398.

### D. Ferrari's First Amended Complaint And Renewed Motion For Summary Judgment

Ferrari filed an amended complaint on October 17, 2014. JA:000006; JA:000400. She filed a renewed motion for summary judgment the same day, without affording Defendants an opportunity to even answer the amended complaint. JA:000006. Disregarding an order of the district court, Ferrari also did not obtain permission before bringing her renewed motion for summary judgment. JA:000005-000006; JA:000538. "Because plaintiff's counsel elected not to follow the Court's instruction, this required a further notice of the Court dismissing the motion for summary judgment…." JA:000006; JA:000538-000539. Plaintiff did not file any other motion for summary judgment. JA: 000539.

### E. The Parties' Stipulation For Judgment and Faulkner's Fee Application

In light of the ever-increasing costs of litigation, Defendants elected to settle the matter and the parties submitted a joint stipulation for a damages judgment to the district court on December 10, 2014. JA:000007; JA:000410. The stipulation provided "that judgment may enter in favor of plaintiff in the total amount of $3,000 with reasonable costs and attorney's fees to be determined by the Court." JA:000410. Faulkner submitted a fee application and an affidavit to the district court on December 19, 2014. JA:000007; JA:000411. The district court granted Faulkner's application in part, and denied it in part, on October 22, 2015. JA:000007; JA:000535. Ferrari filed a motion for reconsideration on November 3, 2015, which the district court summarily denied on November 4, 2015. JA:000007; JA:000541.

Ferrari filed her notice of appeal with the district court on November 9, 2015. JA:000007; JA:000586.

## SUMMARY OF ARGUMENT

The Court should affirm the U.S. District Court for the District of

Connecticut's order granting, in part, Ferrari's application for attorneys' fees. The

United States Supreme Court has consistently emphasized that the key characteristic

of a proper attorneys' fee award under a fee-shifting statute like the FDCPA is

reasonableness. The reasonable fee is calculated by determining a reasonable number

of hours expended and multiplying that figure by a reasonable hourly rate. The

district court must also consider factors specific to the case, either at the outset, as

part of the hours expended and the hourly rate determinations, or as an adjustment of

the total figure after the computation is complete. Under either formulation of the

calculus, the reasonableness determination is anchored by a question asked every day

by attorneys billing private clients: what would a reasonable, paying client be willing to

pay for the legal services rendered?

The reasonableness analysis under a fee shifting statute is designed to mimic

actual market forces, which keep attorneys' fees within reason by forcing private

attorneys billing private clients to charge no more than the market will bear, often

requiring those attorneys to negotiate and reduce their bills. Fee-shifting statutes—

particularly ones like the FDCPA, which apply to individuals who, as consumers with

accounts in collection, often do not have the financial resources to retain counsel—

operate on the legal fiction that the plaintiff is being billed, when in fact it is the

defendant that will actually pay a successful plaintiff's attorneys' fees. Consequently,

the district courts must impose these market forces on the successful plaintiff's attorney to prevent defendants from having to pay an inflated fee that no actual client would ever pay for legal services. The district court is provided wide discretion in performing that function.

Faulkner submitted a fee application claiming 90.71 hours expended on the case and requesting an hourly rate of $400. The district court found that the number of hours expended was not reasonable. It also found that the requested hourly rate was not reasonable. The district court based this assessment on four factors: (1) Faulkner prepared and filed a clearly defective initial complaint, which lead to Defendants filing a successful motion for judgment on the pleadings and Faulkner filing an amended complaint; (2) Faulkner filed a summary judgment motion before the district court could rule on Defendants' motion for judgment on the pleadings, and the court denied the summary judgment motion as moot, when the district court granted Defendants' motion for judgment on the pleadings; (3) Faulkner renewed the motion for summary judgment on the same day she filed the amended complaint, without obtaining the district court's permission and without giving Defendants an opportunity to respond to the amended complaint; and (4) Faulkner did not demonstrate competence or quality advocacy in litigating the case.

The district court framed its analysis from the perspective of a "real-world" client that would actually be responsible for paying Faulkner's fees and concluded that, given these four factors, no "real-world," paying client would pay the fee

Faulkner had requested. In other words, the district court concluded that the requested fee was not reasonable. The district court's consideration of these four factors was proper. It properly performed the reasonable fee analysis according to binding precedent. It did not "double count" in making any reductions or otherwise err in reducing Faulkner's fee to $12,960. The Court should therefore affirm the district court's decision.

By affirming the district court's decision, the Court has the opportunity to announce a rule that even experienced, well-regarded practitioners seeking an award of attorneys' fees under a fee-shifting statute like the FDCPA must act reasonably in litigating their cases. Those who do not act reasonably in litigating their cases are subject to a reduction of their compensable hours and hourly rate, just like attorneys billing private clients in the actual marketplace.

# ARGUMENT

## I. Legal Standard and Standard of Review

### A. The Fair Debt Collection Practices Act ("FDCPA") Provides for an Award of <u>Reasonable</u> Attorneys' Fees to the Prevailing Plaintiff.

A consumer who prevails in a FDCPA action "should be awarded costs and reasonable attorney's fees in amounts to be fixed in the discretion of the court." *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (citing *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989); *Emanuel v. American Credit Exch.*, 870 F.2d 805, 809 (2d Cir. 1989)); *see also* 15 U.S.C. § 1692k(a)(3) (providing for recovery of "the costs of the action, together with a reasonable attorney's fee as determined by the court."). "But to acknowledge that a party is eligible for attorneys' fees only begins the inquiry, for the court must then ascertain the proper amount of the award. It should, first of all, reflect a reasonable compensation for work done, tempered by a concern for the difficulty of the case and quality of the advocacy." *Faraci v. Hickey-Freeman Co., Inc.*, 607 F.2d 1025, 1028 (2d Cir. 1979) (citing *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973), *modified on other grounds at* 540 F.2d 102 (1976)). Defendants stipulated in the district court to a violation of the FDCPA. Ferrari is therefore entitled to her *reasonable* attorneys' fees in an amount determined by the district court in its wide discretion.

**B.** **The District Court Must Calculate a Fee That a "Reasonable, Paying Client Would Be Willing to Pay."**

In determining an appropriate fee award under a fee-shifting statute like the FDCPA, "[t]he most useful starting point for determining the amount…is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This is known as the "lodestar" method. *See Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). Although "[a] detailed explanation of the lodestar calculation is unnecessary…compliance with the Supreme Court's directive that fee award calculations be 'objective and reviewable,' implies the district court should at least provide the number of hours and hourly rate it used to produce the lodestar figure." *Millea*, 658 F.3d at 166-67 (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010)); *see also Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 99 (2d Cir. 1997) (internal citations and quotation marks omitted) ("Whenever the district court augments or reduces the lodestar figure it must state its reasons for doing so as specifically as possible.").

This Court has determined that the term "lodestar" has lost its "value as a metaphor" and has abandoned its use. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 493 F.3d 110, 117 (2d Cir. 2007) *amended on other grounds* at 522 F.3d 182 (2d Cir. 2007). The district courts in the

Second Circuit are now tasked with calculating the "presumptively reasonable fee." *Id.*
at 117-18. In opinions after *Arbor Hill*, this Court has acknowledged that the
"presumptively reasonable fee" method is "a derivative of the lodestar method."
*McDaniel v. County of Schenectady*, 595 F.3d 411, 417 n.2 (2d Cir. 2010); *see also Millea*,
658 F.3d at 166 (citing *Arbor Hill*, 522 F.3d at 183 and *Perdue*, 559 U.S. 542, for the
proposition that "[b]oth this Court and the Supreme Court have held that the
lodestar—the product of a reasonable hourly rate and the reasonable number of hours
required by the case—creates a 'presumptively reasonable fee.'").

The district courts apply this methodology in four steps: "(1) determine the
reasonable hourly rate; (2) determine the number of hours reasonably expended; (3)
multiply the two to calculate the presumptively reasonable fee; and (4) make any
appropriate adjustments to arrive at the final fee award." *Adorno v. Port Authority of
New York and New Jersey*, 685 F.Supp.2d 507, 511 (S.D.N.Y. 2010).

Under either the traditional or derivative formulation, the method "is not
perfect. It creates an incentive for attorneys to bill as many hours as possible, to do
unnecessary work, and for those reasons can create a disincentive to early settlement.
Under certain conditions, moreover, lodestar awards can create the near opposite
incentive, encouraging attorneys to settle before trial even when it is not in their
client's best interest." *McDaniel*, 595 F.3d at 418 (citing *Goldberger v. Integrated Res. Inc.*,
209 F.3d 43, 48-49 (2d Cir. 2000)). To safeguard against these inherent flaws, the
district court must remember that "[t]he presumptively reasonable fee boils down to

'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" *Simmons v. New York City Transit Authority*, 575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill*, 493 F.3d at 112, 118)).

### 1. The district court must determine a reasonable number of hours that were "required by the case."

The district court's focus in determining what number of hours is reasonable is placed on the "hours *required* by the case…." *Millea*, 658 F.3d at 166 (emphasis added) (citing *Arbor Hill*, 522 F.3d at 183; *Perdue* 559 U.S. 542). The district court must accordingly "take[] account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary,'" and exclude them from the presumptively reasonable fee calculation. *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (citing *Hensley* at 434); *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (citing *Hensley* at 434).

Such accounting "requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). This is true in the context of a fee-shifting statute because "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley* at 434 (emphasis in original and citing *Copeland v. Marshall*, 641 F.2d 880, 891 (1980) (*en banc*)).

## 2. The district court must determine the hourly rate "a paying client would be willing to pay."

The Court in *Arbor Hill* held that "[t]he reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors [discussed *infra*]; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* at 117-18. Other relevant factors include the district court's own "knowledge of the relevant market" and "the quality of a prevailing party's counsel's representation...." *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96-97 (2d Cir. 2006); *Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*, 478 U.S. 546, 566 (1986), *rev'd after rehearing on other grounds*, 483 U.S. 711 (1987); *see also Perdue*, 559 U.S. at 553-54.

## 3. The district court must account for "case-specific factors" in adjusting the presumptively reasonable fee upward or downward.

In *Hensley*, the Supreme Court held that "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." *Hensley* at 434. In addition to the lodestar or presumptively reasonable fee calculation, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward...." *Id.* This Court, in *U.S. Football League v. National Football League*, 887 F.2d 408 (2d Cir. 1989), turning to the Model Rules of Professional Responsibility 1.5,

set out the following list of factors that a district court may consider in making such an adjustment:

(1)    the time and labor required;

(2)    the novelty and difficulty of the questions;

(3)    the skill requisite to perform the legal service properly;

(4)    the preclusion of other employment by the attorney due to acceptance of the case;

(5)    the customary fee;

(6)    whether the fee is fixed or contingent;

(7)    time limitations imposed by the client or the circumstances;

(8)    the amount involved and the results obtained;

(9)    the experience, reputation and ability of the attorneys;

(10)    the "undesirability" of the case;

(11)    the nature and length of the professional relationship with the client; and

(12)    awards in similar cases.

*Id.* at 415 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)).

The *Hensley* court cautioned that, although it is proper for the district court to make an adjustment to the lodestar calculation, "many of these factors are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n. 9. Notwithstanding, "[f]rom a mathematical perspective…it makes little difference whether a court…considers case-specific

factors to estimate a reasonable rate for an attorney's services, which is then multiplied by the number of hours worked, or whether the court takes the traditional approach and considers these same factors in calculating a multiplier to the lodestar." *McDaniel*, 595 F.3d at 422 (citing *Arbor Hill*, 522 F.3d at 192). "The benefit of *Arbor Hill*'s methodology, [however] is that by considering case-specific factors at the outset, the district court's focus on mimicking a market is maintained." *Id.*

Thus, it is within the district court's discretion whether to utilize these "case-specific" factors in determining a reasonable hourly rate and reasonable number of hours expended, or to use them as a basis for adjustment of the lodestar amount upward or downward after it has been calculated. *See Hensley*, 461 U.S. at 429 ("The amount of the fee, of course, must be determined on the facts of each case.").

### C. This Court Reviews the District Court's Determination of Ferrari's Reasonable Attorneys' Fees for an Abuse of Discretion.

The determination of a reasonable attorney fee award "is properly committed to the sound discretion of the district court and will not be overturned absent an abuse of discretion, such as a mistake of law or a clearly erroneous factual finding." *Goldberger*, 209 F.3d at 47 (2d Cir. 2000) (citing *Kirsch*, 148 F.3d at 172 (2d Cir. 1998); *Herman v. Davis Acoustical Corp.*, 196 F.3d 354, 356 (2d Cir. 1999); *see also City of Riverside v. Rivera*, 477 U.S. 561, 586 (1986) (Powell, J., concurring in judgment); *Scott v. City of New York*, 626 F.3d 130, 132 (2d Cir. 2010); *McDaniel*, 595 F.3d at 416. Aside from mistakes of law or clearly erroneous factual findings, "[a] district court has abused its

discretion when the award…'cannot be located within the range of permissible decisions.'" *Scott*, 626 F.3d at 132 (citing *McDaniel*, 595 F.3d at 416; *Rivera*, 477 U.S. at 586).

This Court has previously explained that "'abuse of discretion'—already one of the most deferential standards of review—takes on special significance when reviewing fee decisions. '[T]he district court, which is intimately familiar with the nuances of the case, is in a far better position to make [such] decisions than is an appellate court, which must work from a cold record." *Goldberger*, 209 F.3d at 47-48 (citing *In re Bolar Pharm. Co. Sec. Litig.*, 966 F.2d 731, 732 (2d Cir. 1992) (*per curiam*)). The Second Circuit has also made clear that the policy underlying the use of the lodestar method to determine a presumptively reasonable fee award is to avoid needless satellite litigation or appellate contests of awards issued under fee-shifting statutes. *See e.g.*, *Seigal v. Merrick*, 619 F.2d 160, 164 n. 8 (2d Cir. 1980) (citing *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.* 540 F.2d 102, 116-117 (3d Cir. 1976)) ("We find it necessary to observe that we did not intend that a district court, in setting an attorneys' fee, become enmeshed in a meticulous analysis of every detailed facet of the professional representation. It was not and is not our intention that the inquiry into the adequacy of the fee assume massive proportions, perhaps even dwarfing the case in chief."). Indeed, the Supreme Court has opined that an appeal from an award of attorneys' fees "must be one of the least

socially productive types of litigation imaginable…." *Hensley*, 461 U.S. at 442

(Brennan, J., concurring in part and dissenting in part).

## II.  The District Court Properly Reduced Faulkner's Compensable Hours By Excluding Time She Billed For Drafting The Initial, Deficient Complaint And Litigating Its Sufficiency, And By Excluding Time Faulkner Billed For Preparing The Premature, Unnecessary Motions For Summary Judgment.

Faulkner submitted a fee application in which she claimed to have expended

90.71 hours in prosecuting Ferrari's FDCPA claim against Defendants. JA 000441-

443.  The district court "conclude[d] that much of counsel's fee claim should be

discounted because of wasteful and inefficient litigation in the prosecution of this

case." JA:000536.  Specifically, the district court excluded 12.45 hours "relate[d]

to…filing of the initial complaint and the ensuing litigation resulting from its

inadequacies," and excluded an additional 12.45 hours "because defendants' counsel

were put in the position of expending funds to seek dismissal of the inadequate

complaint."  JA:000537.  The district court also excluded 15.05 hours from the

application for time Faulkner expended in filing "a premature motion for summary

judgment on September 13, 2014," and in filing an additional, subsequent "premature

motion for summary judgment."  JA:000538.

In total, the district court excluded 39.95 hours from Ferrari's fee application.

Those exclusions were proper because they did not fall outside the "range of

permissible decisions" available to the district court.  *Scott*, 626 F.3d at 132; *see also*

*Kirsch*, 148 F.3d at 173 (quoting *Hensley*, 461 U.S. at 434).

## A. The Initial Complaint Was Clearly Deficient Under Federal Rule of Civil Procedure 8 and Was Properly Dismissed Pursuant to Rule 12.

Ferrari initially filed "a stream-of-consciousness-style complaint that falls well below an acceptable standard of clarity." JA:000393. In response, and with "good reason," Defendants brought a motion for judgment on the pleadings, which the district court granted on October 17, 2014. JA:000536-000537. The record demonstrates that Ferrari's initial complaint was deficient under Federal Rule of Civil Procedure 8, and the district court properly dismissed it pursuant to Rule 12.

### 1. Rule 8 requires a short and plain statement of the claim showing the plaintiff is entitled to relief and a demand for that relief.

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a)(1)-(3).

### 2. Rule 12(c) allows a party to move for judgment as a matter of law after the pleadings have closed on the grounds that the complaint does not state a cognizable claim for relief.

Rule 12 of the Federal Rules of Civil Procedure provides, in part, that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for

judgment on the pleadings." Fed. R. Civ. P. 12(c). "On a Rule 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). A district court decides a motion brought under Rule 12(c) using the same standard applicable to a motion to dismiss for failure to state a claim under Rule 12(b)(6). *L-7 Designs, Inc.*, 647 F.3d at 429.

The pleading scheme implemented under the Rules "does not countenance pleadings that are conclusory; it requires factual allegations that are sufficient to 'give the defendant fair notice of what…the claim is and the grounds upon which it rests.'" *Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In addition to providing fair notice to the opponent, a minimally sufficient complaint "must allege facts that would be sufficient to permit a reasonable inference that the defendant has engaged in culpable conduct…." *Id.* at 182 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows *the court* to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added and citing *Twombly*, 550 U.S. at 556).

### 3. The complaint's "mass of factual allegations" and "laundry list" of statutory provisions did not give Defendants fair notice of Ferrari's claims and did not contain sufficient facts for the court to draw the reasonable inference that Defendants were liable for the misconduct alleged.

The district court granted Defendants' motion for judgment on the pleadings in an order dated October 14, 2014.  JA:000005.  In dismissing Ferrari's initial complaint without prejudice, the district court found that:

> …the complaint is a jumble of factual allegations that are far from clear how they relate—if at all—to one another.  Nor does the complaint describe in any reasonable detail the individual conduct and responsibility of defendants Strumpf and Moises, or make clear why each of them could plausibly be subject to liability for each and every one of the seriatim violations listed at the end of the complaint.

JA:000396.  The district court additionally determined that,

> [b]ecause plaintiff has done no more than lump all these [statutory] provisions in a running list at the end of the complaint, [the court] cannot ascertain if plaintiff's allegations plausibly meet the requirements for relief under any or all of them.  And all this is to say nothing of plaintiff's failure to cite or identify the "parallel provisions" of state law for which she seeks recovery, as well as to specify the conduct of each of the defendants that plausibly rises to the level of a CUTPA violation.

JA:000397.

Other district courts have also found this type of pleading in the FDCPA context deficient under Rule 8.  *See e.g., Korzeniowksi v. NCO Financial Systems*, No. 3:09-cv-1399 (WWE), 2010 WL 466162, at *5 (D. Conn. Feb. 8, 2010) ("Plaintiff's

complaint is a laundry list of the elements of the statutory violations without any factual allegations that raise the right to relief to plausible."); *Kimmel v. Phelan Hallinan & Schmieg, PC*, 847 F.Supp.2d 753, 769-70 (E.D. Pa. 2012) ("A plaintiff does not meet [the Rule 8] requirement by propounding a mass of factual allegations and then enumerating a laundry list of statutory provisions that a defendant allegedly violated.").  Because the "true substance" of Ferrari's claims against Defendants was "well disguised" in the initial complaint within a mass of factual allegations accompanied by nothing more than a laundry list of statutory provisions that Defendants allegedly violated, Ferrari did not provide Defendants with fair notice of her claims.  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

The initial complaint also failed to apprise the district court properly of Ferrari's alleged claims against Defendants by providing sufficient facts from which the district court could draw the reasonable inference that Defendants were liable for the alleged misconduct, as required by Rule 8.  *Iqbal*, 556 U.S. at 678 (emphasis added and citing *Twombly*, 550 U.S. at 556).

> **i.    Ferrari listed each of the Defendants as a party-defendant in the initial complaint, but failed to provide an adequate factual basis to differentiate the Defendants' alleged conduct or to plead adequately the liability of each individual Defendant for that alleged conduct.**

This Court has held that, to comply with the minimum pleading standards set forth in Rule 8, a plaintiff suing multiple defendants must provide a "factual basis to

distinguish their conduct….” *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001) (affirming district court's dismissal of complaint where, “[b]y lumping all defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy” Rule 8); *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, N0. 12-cv-2837, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012), *aff'd*, 530 Fed. Appx. 19 (2d Cir. 2013) (“Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants.”). A plaintiff's failure to describe such a factual basis in her complaint is grounds for the district court to dismiss the complaint. *Id.*

Ferrari named U.S. Equities, Strumpf, and Moises as defendants in her lawsuit. JA:000001; JA:000009 at ¶¶ 4-6. U.S. Equities is a debt purchaser. JA:000013. Linda Strumpf is an attorney who, at times, litigates consumer collection cases. *Id.* Olga Moises is an employee of U.S. Equities. JA:000014.

After Ferrari identified Defendants in her initial complaint, she simply lumped them together in her factual averments, making it impossible to determine which defendant was allegedly responsible for which alleged conduct. *See* JA:000396 In paragraphs 20 and 22 of the initial complaint, Ferrari made the following blanket averments regarding Defendants' alleged violations of the FDCPA:

> 20. Despite knowledge that their documentation of accounts purchased from Turtle Creek was insufficient to support judgment, defendants intentionally continue to abuse an

> overburdened court system by seeking judgment in the hopes that the utterly inadequate and inadmissible evidence would not be scrutinized.
>
> 22. In the collection efforts, defendants violated the FDCPA, § 1692d, -e, -f(1), or –g. Defendant EQUITIES violated the parallel provisions of the CCPA.

JA:000011 (emphasis added). Ferrari failed to assert plausibly that each defendant was liable to her under each of the FDCPA sections set out in paragraph 22 by virtue of the vague, blanket allegations contained in her initial complaint.

The roles played during the litigation process in a consumer collection file pursued by a debt purchaser, its collection attorney, and its employees are markedly different and can vary widely depending on how the particular case is litigated. Ferrari failed to plead adequately what role U.S. Equities, Strumpf, and Moises each played in the litigation of the State Court Action. She further failed to allege which specific provisions of the FDCPA applied to which Defendants and how each defendant violated those specific provisions.

These failures deprived each individual defendant of the fair notice of the claims being asserted against them that is required by Rule 8. *See Atuahene*, 10 Fed. Appx. at 34; *Ochre LLC*, 2012 WL 6082387 at *6. Ferrari's failures also made it impossible for the district court to draw the reasonable inference that any of the Defendants was liable for any of the misconduct alleged in the initial complaint. The district court's dismissal of the initial complaint was therefore proper.

###### ii. Ferrari did not plead the alleged CUTPA claim with particularity.

Ferrari set forth a demand for relief in paragraph three of the initial complaint's "wherefore" clause, wherein she requested an "[a]ward of actual and punitive damages under the CUTPA, treble damages for conversion of the attached wages (§52-564), and such other and further relief as law or equity may provide." JA:000011. The initial complaint does not contain any specific factual allegations related to the CUTPA. Indeed, Ferrari did not cite to any specific provision of the CUTPA that Defendants allegedly violated, did not indicate how the CUPTA was violated, or identify which Defendants allegedly violated its provisions. *Id.*

"A CUTPA claim must be pleaded with particularity to allow evaluation of the legal theory upon which the claim lies." *Sorisio v. Lenox, Inc.*, 701 F.Supp. 950, 962 (D. Conn. 1988) *aff'd at* 863 F.2d 195 (2d Cir. 1988) (citing *Grand Light & Supply Co. v. Honeywell, Inc.*, No. N78-342 (D. Conn. July 13, 1984), *rev'd*, 771 F.2d 672 (2d Cir. 1985)). Ferrari set forth no factual averments in the initial complaint that could provide fair notice to any of the Defendants as to the nature of Ferrari's purported CUPTA claim, or that could allow the district court to infer reasonably that any of the Defendants was liable for any misconduct under that statute. Ferrari also failed to plead her purported CUPTA claim with particularity. The district court therefore properly dismissed the initial complaint as it related to the alleged CUPTA claim.

### iii. Ferrari did not cite in the initial complaint to a provision of the CCPA that U.S. Equities allegedly violated.

In paragraph 22 of the initial complaint Ferrari alleged that, in addition to violating §§ 1692d, 1692e, 1692f(1), and 1692g of the FDCPA, U.S. Equities also "violated the parallel provisions of the CCPA." JA:000009. She did not cite to any particular provision of the CCPA in the initial complaint. She did not specify what alleged conduct of U.S. Equities violated the CCPA, or how it violated the CCPA. The district court cited these failures in support of its decision to dismiss the initial complaint. JA:000397.

Because paragraph 22 did not provide U.S. Equities with fair notice of Ferrari's alleged CCPA claim and could not allow the district court to draw a reasonable inference that U.S. Equities engaged in misconduct which violated the statute, the district court's dismissal of the initial complaint as it related to the alleged CCPA claims was proper.

### iv. Ferrari could not cure the deficient initial complaint by reference to extrinsic records that were neither attached to nor referenced in the initial complaint.

Ferrari suggests in her brief, as she did in support of her fee application, that her "initial complaint fairly disclosed her claims to experienced debt collectors, and the record below evidenced that the Defendants possessed actual understanding of the claims," and, therefore, the "initial complaint met the applicable test that the complaint contain a short and plain statement of the claim showing that the plaintiff

was entitled to relief." Appellant's Memo. p.17; JA:000512-000513; JA:000544. She

specifically argues that "[t]he Complaint was plainly not unintelligible to the

experienced debt buyer Defendants[2], whose actions disclosed they fully understood

the legal import of the factual allegations in the Complaint…[t]hus, Defendants did

*not* file a motion for more definite statement—the remedy for a supposedly

unintelligible complaint." Appellant's Memo. pp. 28-29 (emphasis in original). Ferrari

implicitly advances the argument that filings outside of the complaint may provide an

opposing party with "actual understanding of the claims" contained in the complaint

sufficient for the complaint to survive a Rule 12 motion. This argument has no merit.

Motions for judgment on the pleadings are decided using the same standard for

deciding motions to dismiss under Rule 12(b)(6). *See Hayden v. Paterson*, 594 F.3d 150,

160 (2d Cir. 2010) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)). The

Second Circuit has explained that "a Rule 12(b)(6) motion challenges the facts alleged

on the face of the complaint, or, more accurately, the sufficiency of the statements <u>in</u>

<u>the complaint</u>…." *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.

1991), *cert. denied*, 503 U.S. 960 (1992) (emphasis added and citing *Ryder Energy*

*Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)).

Accordingly, "Rule 12(b)(6) does not give the district court authority to consider

---

[2] It is unclear whether Ferrari here refers to all three Defendants or solely to U.S.
Equities because, consistent with her initial complaint, Ferrari lumps them all together
as "debt buyers" when the record demonstrates that U.S. Equities is the only
Defendant that engages in debt buying.

matters outside the pleadings; it simply delineates the procedure which must be followed in testing the legal sufficiency of a complaint." *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991) (citing *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991); *see also L-7 Designs, Inc.*, 647 F.3d at 422.

The district court found the initial complaint wanting under Rule 8 and properly dismissed it on Defendants' Rule 12(c) motion. JA:000393. The district court specifically ruled:

> I cannot say that the convoluted complaint here meets a fair notice standard. Although at just two-and-a-half pages it certainly satisfies Rule 8's requirement that it be "short," it comes nowhere near the requirements for allegations that are "simple" and "direct" and that contain a "plain statement of the claim showing that [plaintiff] is entitled to relief." To the contrary, the complaint is a jumble of factual allegations that are far from clear how they relate—if at all—to one another.

JA:000396.

Ferrari did not attach any documents to the initial complaint. JA:000009-000012. The district court therefore properly considered only the facts alleged on the face of Ferrari's initial complaint in testing its sufficiency on Defendants' Rule 12(c) motion. *Hayden*, 594 F.3d at 160; *Cortec Industries, Inc.*, 949 F.2d at 47; *LaBounty*, 933 F.3d at 123. The district court did not have authority under Rule 12 to consider any of the extrinsic documents Ferrari suggests provided the district court with additional information clarifying the "stream-of-consciousness" averments and laundry list of statutory provisions set forth in the initial complaint, including the parties' Rule 26(f)

discovery report (Appellant's Memo. p. 29; JA:000020), Ferrari's May 14, 2014, prefiling letter (Appellant's Memo. p. 29; JA:000174), Ferrari's opposition to Defendants' motion for judgment on the pleadings (Appellant's Memo. p. 7; JA:000115), and Ferrari's briefing on her premature motion for summary judgment (Appellant's Memo p. 29; JA:000176).

The district court specifically rejected Ferrari's suggestion that her deficient complaint could be cured by reference to records extrinsic to the initial complaint:

> It is no answer to say that the context for and allegations of the complaint might be clarified by extrinsic records that have not been referred to in the complaint (and as to which plaintiff herself has opposed taking judicial notices, *see* Doc. #22), or that plaintiff has recently filed a motion for summary judgment (Doc. #53) in which she elaborates upon one aspect of her apparent claim and as to just one of the defendants. <u>All of the defendants are entitled from the start a plain statement of facts in a complaint that appropriately frames and bounds the legal claims against them</u>.

JA:000397-000398 (emphasis added).

This analysis was correct; the district court could not consider those documents on a Rule 12(c) motion. Similarly, Defendants' purported "actual understanding" of Ferrari's claims is irrelevant. The purpose of a Rule 12(c) motion is to test the legal sufficiency of the plaintiff's complaint from the face of the complaint itself, which the district court did in this case. It is not intended to divine the defendant's subjective understanding or interpretation of what the allegations in the complaint might mean. Based on the court's review of the face of the pleading, and upon finding the initial

complaint legally insufficient under Rule 8, the district court properly dismissed the complaint without prejudice.

**B.** **Both Summary Judgment Motions Were Filed Prematurely, and the District Court Properly Reduced Faulkner's Time Spent Preparing Them.**

Faulkner elected to file two summary judgment motions in the district court: the first while Defendants' Rule 12(c) motion for judgment on the pleadings was still pending with the district court, and the second immediately after Faulkner filed the amended complaint—but before Defendants could interpose a response to the amended complaint—and she did so without leave of court. Both motions were filed prematurely, and a "real-world" client would not have approved Faulkner's time spent preparing them. Because Faulkner's time spent drafting the motions was not "reasonably expended," the district court's reduction of that time was proper.

**1.** **The first summary judgment motion was filed prematurely and the time Faulkner spent drafting it was not "reasonably expended."**

The district court granted Defendants' motion for judgment on the pleadings, in part, on October 14, 2014, dismissing Ferrari's complaint without prejudice to refiling another complaint on or before November 14, 2014. JA:000005; JA:000393. This is the relief Defendants very clearly requested from the district court in their motion for judgment on the pleadings (albeit with prejudice to refiling, rather than the dismissal without prejudice that the district court ultimately granted), and is the typical result of a defendant's successful Rule 12(c) motion. JA:000056; JA:000393; Fed. R.

Civ. P. 12(b)(6), 12(c); see also, e.g., *Burnett v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999) (describing standard of review for and effect of successful Rule 12(c) motion).

Notwithstanding the very real possibility that the district court would grant Defendants' motion, thus disposing of the case, or, at minimum, requiring Ferrari to file an amended complaint, Faulkner filed the first summary judgment motion before the district court could rule on Defendants' Rule 12(c) motion. JA:000005; JA:000175; JA:000393.

Given the clear risk that the initial summary judgment motion "could become unnecessary or obsolete in light of the pending motion for judgment on the pleadings," it was not reasonable for Faulkner to bill 13.75 hours for preparing a motion that, by virtue of the district court's October 14, 2014, order granting in part Defendants' Rule 12(c) motion, became entirely moot. JA:000398; JA:000441-000443; JA:000538-000539. Because no "real world" client would have approved Faulkner's billing for time spent on the first motion for summary judgment, those hours were not "reasonably expended" and the district court properly excluded them. See *Hensley* at 433-34 ("[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.").

The district court, in denying Faulkner's request for fees related to preparation of the first summary judgment motion stated that, "[a]lthough the Court gave plaintiff permission to file a summary judgment motion upon plaintiff's request at a teleconference on September 12, 2014, (Doc. # 54), this grant of permission did not

constitute a judgment that it was reasonable for plaintiff's counsel to prepare and file a motion for summary judgment at the same time that defendants' motion for judgment on the pleadings was pending." JA:000538. In response, Faulkner argues that, "[w]hile work on the motion was commenced prior to the conference, that work was necessary to properly complete the prefiling conference letter of May 20, 2014…" and, more specifically, "to be able to draft the letter clearly, to be prepared to discuss it intelligently, and to file it promptly upon permission following the conference." Appellant's Memo. pp. 32-33; JA:000545. The prefiling conference letter contained the following description of Ferrari's basis for summary judgment:

> The nature and basis of the proposed motion is as follows: Defendant Moises signed a small claims writ under oath falsely claiming that she had sent a collection letter to plaintiff in order to invoke small claims jurisdiction and to seek judgment in favor of defendant U.S. Equities, and made other statements under oath that were false in order to collect amounts not then due or owing. The document violated the Fair Debt Collection Practices Act, § 1692e which prohibits "false, deceptive, or misleading representations or means in connection with the collection of any debt."

JA:000174.

This succinct description of Ferrari's proposed motion was sufficient for the district court to grant Faulkner leave to file it (though the district court nowhere indicated that it would be reasonable for Faulkner to file the summary judgment motion before a decision on Defendants' pending Rule 12(c) motion). JA:000005; JA:000538. The record therefore does not support Faulkner's contention that she needed to draft an entire supporting memorandum before the district court granting

her leave to file the first summary judgment motion, let alone before the district court's deciding Defendants' motion for judgment on the pleadings. Accordingly, because the hours Faulkner devoted to drafting the first motion for summary judgment, and before the prefiling conference, were neither necessary nor reasonable, the district court's reduction of that time from Faulkner's fee application was proper.

2.   **The time billed for the renewed summary judgment motion was not reasonable, because the motion was filed prematurely and without leave of court.**

Ferrari filed an amended complaint on October 17, 2014, and filed a renewed motion for summary judgment the same day. JA:000006; JA:000400. Faulkner's time spent preparing and filing a renewed motion for summary judgment on the same day that she filed an amended complaint, before Defendants could respond to the amended complaint, and in clear defiance of the district court's order was not "reasonably expended." The district court's reduction of this time from the fee application was therefore proper.

C.   **No Reasonable, Paying Client Would Pay for Faulkner's Time Spent Drafting the Initial Complaint and Litigating Its Sufficiency, or for Faulkner's Time Spent Preparing the Summary Judgment Motions While a Rule 12 Motion Was Still Pending, Because None of That Time Was Required by the Case.**

As this Court has previously recognized, "[t]he touchstone in determining whether hours have been properly claimed is reasonableness…made by reference to standards established in dealings between paying clients and the private bar." *Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers*, 34 F.3d 1148, 1161 (2d Cir. 1994)

(quoting *Davis v. City and County of San Francisco*, 976 F.3d 1536, 1543 (9th Cir. 1992) *vacated in part at* 984 F.2d 345 (9th Cir. 1993)).  Such reasonable hours must be "required by the case." *Millea*, 658 F.3d at 166. Consistent with this analytical framework, the district court conducted its analysis of Faulkner's fee application "from the perspective of what a reasonable 'real-world' client who is liable to pay for legal services would be prepared to pay, absent the statutory fee-shifting provision of the FDCPA." JA:000536; see also Hensley at 434.  Accordingly, the district court committed no error by considering what a "reasonable, paying client" would pay for Faulkner's legal services in light of the fact that such client would desire to pay the least amount in legal fees necessary to successfully litigate her FDCPA claim.  See Simmons, 575 F.3d at 174.

A real-world client would object to Faulkner's billing related to her preparation and filing of the initial complaint and litigating its sufficiency on Defendants' Rule 12(c) motion.  Faulkner billed 12.45 hours related to her preparation and filing of the initial complaint and opposing Defendants' Rule 12(c) motion:

| | | | |
|---|---|---|---|
| 03/22/13 | draft complaint | 1.20 | $480.00 |
| 07/10/13 | rsrch judicial notice | 1 | $400.00 |
| 07/11/13 | cont rsrch jud notice | 2 | $800.00 |
| 07/11/13 | beg draft brf re jud notice | 1 | $400.00 |
| 07/12/13 | Rooker rsrch, revise brf opp jud. notice | 0.5 | $200.00 |
| 07/24/13 | rscrch & draft 1st part of brf + | 2.25 | $900.00 |
| 07/24/13 | rsrch & draft next part of brf + | 1.5 | $600.00 |

| 07/27/13 | 12c rsrch, revise brf | 1.25 | $500.00 |
| 07/29/13 | rvw their rply, revise opp jdg, opp prot o | 1 | $400.00 |
| 09/13/14 | supp autho re jdg pleadings | 0.75 | $300.00 |

JA:000441-000443; JA:000537.

After the district court dismissed the initial complaint without prejudice to refiling, in response to Defendants' motion for judgment on the pleadings, Faulkner drafted and filed a much more robust amended complaint on October 17, 2014. JA:000006; JA:000400-000409. The initial complaint, which the district court described as "plainly deficient" and "incoherent," contained 22 paragraphs in four pages; the amended complaint contained 56 paragraphs in ten pages. JA:000009-000012; JA:000400-000409; JA:000536-000537. Faulkner billed 9.5 hours for tasks related to the amended complaint:

| 10/15/14 | rvw ans, disc, stips, beg draft amended | 1.5 | $600.00 |
| 10/16/14 | continue draft amended, rsrch& add cite | 6 | $2,400.00 |
| 10/17/14 | rsrch & add DE SOL to amended comp | 2 | $800.00 |

JA: 000443. The district court did not write off any time Faulkner billed for the amended complaint. JA:000537-000539.

A reasonable, paying client would review Faulkner's invoices and note that she had been charged almost $5,000 for legal services that not only did not advance her legal position, but resulted in dismissal of her claim, which in turn required Faulkner to expend an additional 9.5 hours (and charging the client an additional $3,600) to

simply get the case back before the district court.  No "real-world" client would agree to pay for services that produced these results.  Because the hours dedicated to the tasks of drafting the initial complaint and opposing the motion for judgment on the pleadings were not "required by the case," a reasonable attorney who must answer to her client for her billing in the actual attorney-client marketplace would accordingly be left with only one option. If the attorney wished to retain her client under these circumstances, the attorney would write off the 12.45 hours expended on the initial complaint and the Rule 12(c) litigation.

Faulkner did not do that in this case, because she was billing her adversary, not her client.  After reviewing her invoices, the district court correctly performed the write-off for Faulkner, "mimicking" the actual attorney-client market.  *See McDaniel*, 595 F.3d at 422.  Accordingly, the district court committed no error in doing so.

The same is true for the district court's exclusion of Faulkner's time spent on the two premature summary judgment motions.  Faulkner expended 15.05 hours "in connection with the preparation of the premature and unnecessary motions for summary judgment:"

| 05/01/14 | rvw file for sj, draft plaintiff aff | 1.5 | $600.00 |
|----------|--------------------------------------|-----|---------|
| 05/01/14 | beg draft Rule 56 | 1 | $400.00 |
| 05/02/14 | edit pl aff, continue R 56 | 1.2 | $480.00 |
| 05/02/14 | update rsrch, employee liab, litigation a | 1.3 | $520.00 |
| 05/02/14 | draft sum jd and begin brief | 1.5 | $600.00 |

| 05/03/14 | draft substantive viol part of brf | 1.3 | $520.00 |
| 05/05/14 | final edits SJ | 0.3 | $120.00 |
| 05/05/14 | beg plug in cites for R 56 | 1.4 | $560.00 |
| 05/09/14 | rvw stmts, depo, add last pmt date to sj | 0.5 | $200.00 |
| 05/10/14 | revise Rule 56 | 1 | $400.00 |
| 09/13/14 | supp autho re jdg pleadings | 0.75 | $300.00 |
| 09/13/14 | update rsrch & finish Summ Jdg motion | 2 | $800.00 |
| 10/15/14 | update rsrch on Rooker, claim preclusion | 1 | $400.00 |
| 10/17/14 | renew sum jdf, offer setl | 0.3 | $120.00 |

JA:000442-000443.

The first summary judgment was mooted by the district court's dismissal of the initial complaint. The renewed motion for summary judgment was swiftly denied. As described above, a "real-world," paying client would not be pleased to learn that she had been charged nearly $5,000 for legal services in connection with a "largely unintelligible" initial complaint that invited a successful Rule 12(c) motion. Moreover, that "real-world" client would be incensed to learn, upon review of Faulkner's invoice, that she had also been charged $5,720 for motions that were summarily rejected as premature and unnecessary, were ultimately mooted by the district court's dismissal of the complaint, and which resulted in no material advancement of her FDCPA claim. Because Faulkner did not herself attempt to mimic the actual attorney-client market— in which she would have been forced to write down the time spent preparing the unnecessary summary judgment motions, if she wished to retain her client or get paid

for her services at all—the district court did so for her. This was a decision properly within the district court's discretion.

For these reasons, the district court did not abuse its discretion or otherwise commit reversible error in reducing the number of hours for which Faulkner sought compensation in her fee application from 90.71 to 50.76. JA:000539.

## III. The District Court Properly Reduced Faulkner's Hourly Rate From $400 Per Hour To $250 Per Hour.

The second element of the "presumptively reasonable fee" analysis is a determination of the attorneys' appropriate hourly rate. "The reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 493 F.3d at 117. As with the determination of the attorney's compensable hours, the "district court…bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Id.* at 112 (noting that a plaintiff bringing suit under a fee-shifting statute, in "which fees can be recovered from the other side, has little incentive to negotiate a rate structure with his attorney prior to the litigation…."). Here, a "real-world," paying client would not agree to pay Faulkner more than $250 per hour for her work based on the quality of legal services she actually provided in litigating this case. JA:000539.

**A.** **Though Experienced and Accomplished Within the Consumers'
Bar, Faulkner Did Not Provide "Quality" Representation in <u>This</u>
Case.**

This Court has held that the district court, in deciding what rate a paying client

would be willing to pay, should consider the 12 factors set forth in *Johnson v. Georgia*

*Highway Exp., Inc.*, 488 F.2d 714. *Arbor Hill,* 493 F.3d at 117-18; *see also United States*

*Football League*, 887 F.2d 408. The Fifth Circuit Court of Appeals included the

"experience, reputation, and ability of the attorney" in that list of relevant factors, as

well as the "undesirability of the case," "the nature and length of the professional

relationship," and "awards in similar case," among others. *Johnson* 488 F.2d at 717-19;

*United States Football League*, 887 F.2d 408. Faulkner selected these four factors of the

12 outlined in Johnson for discussion in her fee application. JA:00042-000430.

The Johnson factors are not an exhaustive or exclusive list. ("the district court

should consider, among others, the Johnson factors." *Arbor Hill*, 493 F.3d at 117-18

(emphasis added). Also relevant to the hourly rate determination, for example, is the

quality of representation. *Delaware Valley Citizens' Council for Clean Air*, 478 U.S. at 567;

*Perdue*, 559 U.S. at 553; *Faraci*, 607 F.2d at 1028; *Ruiz v. Maidenbaum & Associates*

*P.L.L.C.*, No. 12-cv-5044-RJS, 2013 WL 3957742, at *4 (S.D.N.Y. Aug. 1, 2013)

(considering quality of legal writing as a factor in determining number of hours

reasonably expended in drafting a legal memorandum).

1. **Faulkner's citation of the "undesirability" and "nature of the professional relationship" factors does not support her request for a $400 hourly rate.**

Faulkner's view that FDCPA cases are "undesirable" to plaintiff's counsel is not shared by the courts, which are facing a deluge of FDCPA lawsuits litigated by the same repeat-players. See e.g., *Pappenfuss v. Receivable Management Services Corporation*, No. 13-cv-175, 2013 WL 5427891, at *1 (E.D. Wis. Sep. 26, 2013) ("The prospect of attorneys' fees and the volume of alleged violations of the FDCPA has resulted in the development of a cottage industry for both plaintiffs and defense attorneys specializing in these sorts of actions and a proliferation of FDCPA litigation in courts."); *Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513-14 (6th Cir. 2007); *Jacobson v. Healthcare Financial Services, Inc.*, 434 F.Supp.2d 133, 138 (E.D.N.Y. 2006), *affirmed in part, vacated in part, and reversed in part by* 516 F.3d 85 (2d Cir. 2008) ("The cottage industry that has emerged does not bring suits to remedy the 'widespread and serious national problem' of abuse that the Senate observed in adopting" the FDCPA).

Although Defendants have no reason to believe that Faulkner provided Ferrari with a "volume discount" reflected in her hourly rate, the Court should also be incredulous about Faulkner's claim that "[i]n consumer cases, the plaintiffs are typically not a 'repeat'…client." JA:000430. Consumers routinely utilize the same attorney to prosecute numerous FDCPA claims, sometimes on a putative class action basis. See recent filings by consumer-plaintiff using same attorneys in the District of

New Jersey: *Thomas v. ARS National Services, Inc.*, No. 15-cv-3635 (D.N.J. May 29, 2015); *Thomas v. Diversified Recovery Solutions, LLC et al,* No. 15-cv-4063 (D.N.J. June 15, 2015); *Thomas v. Capital Management Services, L.P.*, No. 15-cv-5084 (D.N.J. July 2, 2015); *Thomas v. NCB Management Services, Inc.*, No. 15-cv-5189 (D.N.J. July 2, 2015); *Thomas v. LTD Financial Services, L.P.*, No. 15-cv-5474 (D.N.J. July 10, 2015); *Thomas v. Global Credit & Collections Corp., et al,* No. 16-cv-672 (D.N.J. Feb. 8, 2016).

Consequently, neither of these factors supports Faulkner's request for a $400 hourly rate.

> ### 2. Because Faulkner did not provide quality legal representation in this case, the district court acted within its discretion in reducing her hourly rate.

Faulkner described in the fee application her experience, reputation, and ability in the FDCPA context, stating that she "has an outstanding nationwide reputation for her experience and ability in the consumer protection field…." JA:000429. Faulkner also submitted a lengthy affidavit in support of her fee application setting forth her numerous experiences and accolades in the consumer litigation field. JA:000435-000440. Her affidavit includes citation to a number of cases in which she was awarded between $350 and $400 per hour. JA:000437.

Notwithstanding the content of Faulkner's affidavit, the record demonstrates that she did not provide quality advocacy in this particular case. The United States Supreme Court has noted that "considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly

rate…." *Delaware Valley Citizens' Council*, 478 U.S. at 567. The district courts utilized a

similar rationale in reducing Faulkner's requested hourly rate from $400 to $250:

> Counsel's requested rate of $400 per hour presupposes highly competent
> legal services. I did not see evidence of competence in this case. I do
> not believe that a real-world client would willingly pay more than $250
> per hour for the quality of services performed by plaintiff's counsel in
> this case. No reasonable and informed hourly-bill-paying client, for
> example, would have consented to counsel's drafting an obviously
> inadequate complaint that would engender a well-founded motion to
> dismiss (or for judgment on the pleadings). Nor would a reasonable
> client have consented to counsel's sinking nearly two days into preparing
> summary judgment papers before a decision had been made by the
> Court on defendants' motion for judgment on the pleadings. A
> reasonable attorney would have waited until pleading challenges were
> resolved and then sought extensions if necessary of the Court's
> scheduling orders to prepare and file for summary judgment.

JA:000539-000540.

This determination was within the district court's discretion and did not fall

outside the "range of permissible decisions" the district court could have made

concerning Faulkner's hourly rate, based on the court's direct observation of the

litigation. *Scott*, 626 F.3d at 132; *Goldberger*, 209 F.3d at 47-48. Faulkner nonetheless

attacks the district court's determination in two ways. First, she argues that "[t]he

District Court's sole justification for using the $250 rate was its incorrect findings

regarding the initial Complaint and summary judgment motions. Because these

findings were clearly erroneous, they also cannot serve as a basis for reducing the

hourly rate." Appellant's Memo. p. 39. As discussed supra, the district court properly

ruled on Defendants' Rule 12(c) motion and on both of Ferrari's premature,

unnecessary motions for summary judgment. It did not err in making any of those decisions. The district court's decision to reduce Faulkner's hourly rate in this case to $250 is therefore supported by the record and does not constitute an abuse of discretion.

Second, Faulkner suggests that "the District Court had no grounds on which to set the $250 per hour rate," aside from "Defendants' concession that $350 was reasonable" in their opposition to Faulkner's fee application. Appellant's Memo. p. 38-39; JA:000451-000453. Faulkner further contends that "Defendants submitted no evidence as to the reasonable hourly rate, even though it was their burden to produce specific evidence contradicting plaintiff's rate if they sought to set a lower rate." Appellant's Memo. p. 38 (citing *United States Football League*, 887 F.2d at 413. That is an aspirational reading of this Court's holding in United States Football League. The Court actually held that "a party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified." *United States Football League*, 887 F.2d at 413. Nowhere did the Court hold in that case that the party opposing a requested hourly rate under a fee-shifting statute must "produce specific evidence contradicting" the requested rate. *Id.*

Even if it had, the district court possessed all the evidence it needed to determine that a real-world, paying client would not pay any more than $250 per hour for Faulkner's representation in this case: (1) the deficient initial complaint; (2) Ferrari's opposition to Defendants' Rule 12(c) motion necessitated by the deficient

complaint; and (3) the two premature, unnecessary motions for summary judgment.

Additionally, Defendants' position that "[a] more appropriate hourly rate" for

Faulkner's representation "would be $350" did not restrict the district court from

setting Faulkner's rate at a lower figure. See *Miller v. Midpoint Resolution Group, LLC*,

608 F.Supp.2d 389, 394 (W.D.N.Y. 2009) (emphasis in original and quoting 15 U.S.C.

§ 1692k(a)(3)) (defendant's concession that FDCPA plaintiff's attorneys' fees were

"reasonable" "does not relieve [the court] of the obligation to determine for [itself]

the reasonableness of plaintiff's fee request, because the Act provides for an award of

'a reasonable attorney's fee as determined by the court.'"); *Tito v. Rubin & Rothman,*

*LLC*, No. 12-cv-3464, 2014 WL 1092845, at *3 (E.D.N.Y. Mar. 18, 2014) (citing

*McDonald*, 450 F.3d at 96-97) (even where "[d]efendants have not attacked the

reasonableness of the rates charged by plaintiffs' counsel…[the] [c]ourts may use their

own experience in determining whether the hourly rates charged are reasonable.").

Faulkner cites the "community market rate" rule, as articulated by the Third

Circuit in *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031 (3d Cir.

1996) for the proposition that "[w]here…the plaintiff has met his prima facie burden

under the 'community market rate' lodestar test, and the opposing party has not

produced contradictory evidence, the district court may not exercise its discretion to

adjust the requested rate downward." *Id.* at 1036; Appellant's Memo. pp. 38-39. No

published decision in this Circuit has cited the *Washington* holding in support of a

finding that a party opposing a prevailing party's requested hourly rate under a fee-

shifting statute must produce "specific evidence" to refute the requested rate. *But see U.S. Media Corp., Inc. v. Edde Entertainment, Inc.*, No. 94-cv-4849 (MHD), 1999 WL 498216, at *5 (S.D.N.Y. July 14, 1999) (citing *Washington* for the proposition that attorneys' fee award "depends on the degree of success on the prevailing claims in relation to the totality of the claims pursued."). Even if that were, arguably, the law of this Circuit in FDCPA cases, the record is replete with evidence supporting the district court's reduction of Faulkner's hourly rate to $250.

For these reasons the district court did not abuse its "broad discretion" in reducing Faulkner's hourly rate to $250, and its decision cannot be reversed "merely because [the appellate court] might have weighed information provided in the fee petitions differently…." *In re Agent Orange Product Liability Litigation*, 818 F.2d 226, 237 (2d Cir. 1987).

## B. A Paying Client Would Demand a Reduction in Faulkner's Hourly Rate, and the District Court's Decision to So Reduce Faulkner's Rate Was Therefore Within Its Discretion.

An attorney who is recognized in her chosen practice area does not, after a certain number of successful cases, insulate herself from a downward adjustment in her requested hourly rate or otherwise become entitled to an automatic award of her typical hourly rate without regard for the quality of her actual performance in litigating a particular case. The attorney must still earn the fee based on the overall reasonableness of her conduct in the litigation of each case in which she seeks compensation under a fee-shifting statute.

The district court found ample support in the record for rejecting Faulkner's request for a $400 hourly rate. The purpose of both the "presumptively reasonable fee" and the lodestar analyses in the fee-shifting context is to mimic market forces that control attorneys' fees between paying clients and their attorneys. Because of the inefficient, wasteful nature of Faulkner's advocacy in this case, no "real-world," paying client would have agreed to pay an invoice reflecting the billing that Faulkner submitted in her fee application. Were Ferrari actually responsible for the bill, Faulkner would be left with no feasible alternative other than to reduce her hourly rate, if she wished to retain Ferrari as a client who would actually agree to pay her fees.

Because she was not billing Ferrari, but instead was billing her adversary, Faulkner did not appropriately reduce her hourly rate. The district court did not abuse its discretion in reducing the hourly rate for Faulkner.

## IV. The District Court Correctly Calculated The Fee Award And Did Not "Double Count" Any Reductions.

Faulkner submitted a fee application to the district court seeking compensation for 90.71 hours expended in litigating this case. The district court correctly relied upon its direct observation of the litigation and Faulkner's handling of it in reducing the number of compensable hours to 50.76. JA:000536-000539; *Bliven v. Hunt*, 579 F.3d at 213; *Goldberger*, 209 F.3d at 47-48; *In re Bolar Pharm. Co. Sec. Litig.*, 966 F.2d at 732. Faulkner sought compensation for the hours she billed to Defendants in

litigating this case at an hourly rate of $400. The district court assessed that request from the perspective of a "reasonable and informed hourly-bill-paying client," and found it inappropriate given Faulkner's tactics and decisions in litigating the case. JA:000539-000540. The district court instead found $250 to be the appropriate hourly rate based on the quality of Faulkner's work in the case. *Id.* That was a proper basis for reducing Faulkner's rate. *See Arbor Hill*, 493 F.3d 110; *Johnson*, 488 F.2d 714; *United States Football League*, 887 F.2d 408; *Feraci v. Hickey-Freeman Co., Inc.*, 607 F.2d at 1028; *Delaware Valley Citizens' Council for Clean Air*, 478 U.S. at 567.

The district court's computation of Faulkner's fee award is supported by the record and was properly conducted pursuant to both the traditional lodestar method and the "presumptively reasonable fee" approach. *See McDaniel* 595 F.3d at 422.

Faulkner argues that the district court "essentially penalized [her] three times for the same allegedly improper acts." Appellant's Memo. at p. 40. That is not accurate and the case law Faulkner cites in support of this argument is inapposite. In *Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008), the Ninth Circuit found that the district court abused its discretion by reducing "the reasonable hourly rate from $300 to $75 an hour…for 275.2 hours summarizing depositions, based on its conclusion that summarizing depositions was simple enough for a paralegal to perform," and then further reducing the attorney's rate from $300 to $250 an hour for other hours expended on the case based on the "simplicity of summarizing depositions." *Id.* at 1115-16; Appellant's Memo p. 42. The *Moreno* court specifically

held that "[t]he district court may properly use the simplicity of a given task as justification for a reduction in the rate for the hours spent performing that task or as justification for a reduction in the overall rate, but not both." *Id.* at 1116.

Here, the district court wrote off Faulkner's time spent on the initial complaint and ensuing litigation concerning the complaint's sufficiency, as well as the time she spent on the summary judgment motions. It then reduced Faulkner's hourly rate, based on her demonstrated lack of competence and low-quality advocacy in litigating this case. The district court <u>did not</u> apply a specific rate reduction to the time Faulkner spent on the initial complaint and the summary judgment motions—it simply removed that time from her fee application as unnecessary and excessive. Had the district reduced Faulkner's rate for the 39.95 hours related to the initial complaint and summary judgment motions to $100, for example, and then went on to cite Faulkner's decision to file the initial complaint and summary judgment motions as justification for reducing Faulkner's rate on the other tasks she performed in the case to $250, that approach may have constituted "double counting," as the *Moreno* court described it. But that is not what the district court did. Instead, it rejected the hours spent on unnecessary tasks, and due to the poor quality of representation, awarded $250 per hour for the tasks performed that were reasonable and necessary.

The *Cunningham v. County of Los Angeles* decision Faulkner cites for the proposition that the district court here "double counted" reductions to Faulkner's fee request is also distinguishable. Appellant's Memo. p. 42; 879 F.2d 481, 489 (9th Cir.

1988).  In *Cunningham*, the district court erred by attempting to "bifurcate" the "results obtained" factor from *Johnson* in a way that allowed the district court to twice reduce a requested attorneys' fee—"for unsuccessful claims, and again if the final award reflects only partial success."  *Cunningham*, 879 F.2d at 488.  By attempting to split the "results obtained" factor, the district court in *Cunningham* used that factor as "subsumed" in the lodestar calculation of reasonable hours times a reasonable hourly rate and then <u>again</u> as an independent factor in reducing the overall fee award, thus "double counting."  *Id.* at 488-89.

If the district court in this case had considered the lack of quality Faulkner exhibited in her litigation of this matter in reducing her hourly rate, and then also used that factor to justify an additional reduction of the  $12,690.00 award remaining after the lodestar calculation was completed, that may have constituted "double counting," as described by the *Cunningham* court.  But that is not what happened.  Here, the district court only considered Faulkner's lack of quality advocacy in this case once, in determining the reasonable hourly rate.

The district court also did not improperly reduce Faulkner's fee award "to make it proportional to" Ferrari's recovery, as Ferrari suggests.  Appellant's Memo. p. 43.  The district court merely made an observation concerning the relative amount of Ferrari's damages award to the fee award Faulkner originally requested at the outset of its order, before it began the "presumptively reasonable fee" analysis, and again at the close of the order, after it had performed the analysis and had announced that

Faulkner was entitled to a "reasonable attorney's fees" award of $12,690, plus costs. JA:000535-000540. Nowhere in the analysis of its order did the district court suggest that proportionality was a factor influencing its decision to reduce Faulkner's number of compensable hours or her hourly rate.

The district court therefore committed no error.

## CONCLUSION

The fees of attorneys litigating cases under fee shifting statutes like the FDCPA are still subject to the restrictive forces of the actual attorney-client market—those forces are simply mimicked by the courts. Those forces apply even to experienced, well-regarded litigators who do not expend reasonable hours on or exhibit quality advocacy in litigating a particular case. That is what happened here.

Faulkner submitted a fee application seeking compensation for 90.71 hours expended litigating this matter at a rate of $400 per hour. The district court examined the fee application through the lens of a "real-world" client and properly conducted the "presumptively reasonable fee" analysis. It correctly considered the following factors in performing that analysis: the initial, defective complaint and Defendants' related Rule 12(c) motion; the first premature, unnecessary motion for summary judgment; the renewed premature, unnecessary motion for summary judgment; and Faulkner's provision of low-quality legal services in litigating the case.

Because 39.95 of the hours for which Faulkner sought compensation were not reasonably expended or required by the case, the district properly exercised its

discretion in disallowing them. Because no reasonable client would agree to pay Faulkner $400 an hour for the quality of legal services she delivered in this case, the district court properly exercised its discretion in reducing her hourly rate to $250. The district court's decision to reduce Faulkner's total fee award to $12,960 is supported by the record and does not constitute an abuse of discretion.

Accordingly, the district court's partial grant of Ferrari's application for attorneys' fee should be AFFIRMED.

Respectfully submitted,

Dated: April 26, 2016

  ct12745
James F. Sullivan
HOWARD, KOHN, SPRAGUE &
FITZGERALD, LLP
273 Buckingham Street
Hartford, CT 06126-1798
Telephone: (860) 525-3101
Fax: (860) 247-4201
E-Mail: jfs@hksflaw.com

**CERTIFICATE OF COMPLIANCE WITH RULE 32(A)**

1.      This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,443 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, version 14.0.7165.5000.

Ct12754
James F. Sullivan
Attorney for Appellee

Dated:  04-26-2016

# CERTIFICATE OF SERVICE

I certify that on April 26, 2016, I caused a copy of the foregoing Brief of Appellee to be served via the Court's CM/ECF system and by depositing a copy of the same in the United States Mail, first-class postage prepaid, and properly addressed to the following counsel of record:

Anthony J. Majestro
Powell & Majestro, PLLC
405 Capitol Street, Suite P1200
Charleston, WV 25301

Ct12745
James F. Sullivan
Attorney for Appellee

Dated: April 26, 2016

service by



CALL 800.842.0008