# No. 15-3573

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

LIZ FERRARI,

     Plaintiff – Appellant,

v.                                      Appealed From 13-cv-395

U.S. EQUITIES CORP.,
LINDA STRUMPF,
OLGA MOISES,

     Defendants – Appellees.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FROM THE DISTRICT COURT OF CONNECTICUT**

_____

**REPLY BRIEF OF APPELLANT**
_____

Anthony J. Majestro
Powell & Majestro, PLLC
405 Capitol Street, Suite P1200
Charleston, WV 25301
Phone: 304-346-2889
*Counsel for Appellant*

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES .......................................................... ii

ARGUMENT .............................................................................. 1

I. THE "REAL-WORLD" PAYING CLIENTS
STANDARD URGED BY THE DEFENDANTS-APPELLEES
AND ADOPTED BY THE DISTRICT COURT IMPROPERLY
CLOSES THE COURTS TO CONSUMERS ....................................... 1

II. IN THIS FEE-SHIFTING CASE, THE DISTRICT COURT'S
CONSIDERATION OF PROPORTIONALITY WAS A
CLEAR LEGAL ERROR ..................................................... 6

III. THE DISTRICT COURT'S EXTENSIVE FEE REDUCTION
BASED SOLELY ON THE NOTICE-PLEADING
COMPLAINT WAS IMPROPER ........................................... 8

IV. THE DISTRICT COURT'S FEE REDUCTIONS
BASED ON SUMMARY JUDGMENT MOTIONS
WERE IMPROPER ........................................................... 11

V. THE DISTRICT COURT'S DOUBLE DEDUCTIONS WERE
REVERSIBLE ERROR ....................................................... 13

VI. THE DISTRICT COURT IMPROPERLY IGNORED EVIDENCE
AS TO THE MARKET RATE FOR ATTORNEYS IN THE
DISTRICT IS REVERSIBLE ERROR ................................... 14

CONCLUSION ............................................................................ 16

CERTIFICATE OF COMPLIANCE ............................................. 17

CERTIFICATE OF SERVICE...................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                               **Page**

*Anderson News, L.L.C. v. Am. Media, Inc.,*
    680 F.3d 162 (2d Cir. 2012).................................................................... 9

*Arbor Hill Concerned Citizens Neighborhood*
    *Ass'n V. County of Albany and Albany County*
    *Bd. of Elections*, 493 F.3d 110  (2d Cir. 2007) ....................................... 4

*Barfield v. N.Y. City Health & Hosps. Corp.,*
    537 F.3d 132 (2d Cir. 2008) ................................................................. 3

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).............................................................................. 9, 10

*Bergerson v. New York State Office of Mental*
    *Health, Cent. New York Psychiatric Ctr.,*
    652 F.3d 277, 289 (2d Cir. 2011).......................................................... 4

*Briscoe v. City of New Haven,*
    2009 WL 5184357  (D. Conn. 2009)..................................................... 13

*CARCO GROUP, Inc. v. Maconachy,*
    718 F.3d 72  (2d Cir. 2013) .................................................................. 7

*Copeland v. Marshall*,
    641 F.2d 880  (D.C. Cir. 1980)  ............................................................ 5

*Dina v. Cuda & Assocs.,*
    950 F. Supp. 2d 396 (D. Conn. 2013) .................................................. 9

*Douyon v. N.Y. Med. Health Care, P.C.,*
    49 F. Supp. 3d 328 (E.D.N.Y. 2014)..................................................... 6

*Eisemann v. Greene*,
    204 F.3d 393 (2d Cir. 2000) ................................................................. 11

**Cases (cont.)**                                                    **Page**

*Evankavitch v. Green Tree Servicing, LLC,*
    2014 WL 4437645 (M.D. Pa. Sept. 9, 2014) .........................  6

*Farbotko v. Clinton Cty. of New York,*
    433 F.3d 204 (2d Cir. 2005) ...............................................  9

*Grant v. Martinez,*
    973 F.2d 96 (2d Cir.1992) ..................................................  12

*Heritage Pac. Fin., L.L.C. v. Monroy,*
    156 Cal. Rptr. 3d 26 (Cal. Ct. App. 2013)...........................  2

*In re FDCPA Cognate Cases,*
    2016 WL 1273349 (W.D. Mich. Mar. 28, 2016) ..................  8

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,*
    559 U.S. 573 (2010) ..........................................................  8

*Jordan v. Transnational Motors, Inc.,*
    537 N.W.2d 471(Mich. App. 1995) ....................................  2

*Kassim v. City of Schenectady,*
    415 F.3d 246 (2d Cir. 2005) ...............................................  7

*Konits v. Karahalis,*
    409 F. App'x 418 (2d Cir. 2011) ........................................  5

*Lochren v. Cty. of Suffolk,*
    344 F. App'x 706 (2d Cir. 2009) ........................................  4

*McDaniel v. Cty. of Schenectady,*
    595 F.3d 411 (2d Cir. 2010) ...............................................  4

*Nigh v. Koons Buick Pontiac GMC, Inc.,*
    478 F.3d 183 (4th Cir. 2007).............................................. 3, 4

**Cases (cont.)**                                                              **Page**

*Pape v. Law Offices of Frank Peluso,*
    Civ. No. 3:13cv63 (JGM) (D.Ct. Feb. 25, 2016) .................................   6

*Patterson v. Balsamico,*
    440 F.3d 104 (2d Cir. 2006)..................................................................   15

*Quaratino v. Tiffany & Co.,*
    166 F.3d 422 (2d Cir. 1999 ..................................................................   2, 3

*Randle v. H & P Capital, Inc.,*
    513 Fed. Appx. 282 (4th Cir. 2013) ....................................................   6

*Reiter v. MTA New York City Transit Auth.,*
    457 F.3d 224 (2d Cir. 2006)..................................................................   15

*Richardson Greenshields Sec., Inc. v. Lau,*
    825 F.2d 647 (2d Cir. 1987)..................................................................   11

*Russell v. Absolute Collection Services, Inc.,*
    763 F.3d 385 (4th Cir. 2014)................................................................   8

*Sayyed v. Wolpoff & Abramson,*
    485 F.3d 226 (4th Cir.2007) ................................................................   8

*Serna v. Law Office of Joseph Onwuteaka, PC,*
    2014 WL 3749652 (S.D. Tex. July 29, 2014)........................................   6

*Simmons v. New York City Transit Authority,*
    575 F.3d 170 (2d Cir. 2009)..................................................................   4

*Twin City Fire Insurance Company v. Employers*
    *Insurance of Wausau,* 1
    24 F.R.D. 652 (D. Nev. 1989)...............................................................   13

*United States v. Board of Educ. of City of Chicago,*
    636 F. Supp. 1046 (N.D. Ill. 1986).......................................................   13

**Statutes and Rules**                                                   **Page**

Fed. R. Civ. Pr. 1 ............................................................... 12

Fed. R. Civ. P. 11(c) ...................................................... 14

Fed. R. Civ. P. 56(b) ...................................................... 11

**Other Authorities**

Consumer Financial Protection Bureau Press Release (Apr. 25, 2016),
    http://www.consumerfinance.gov/about-us/newsroom/
    cfpb-takes-action-halt-illegal-debt-collection-practices-
    lawsuit-mill-and-debt-buyer/ ............................................... 7

Friedman, Rick, and Malone, Patrick, Rules of the Road:
    A Plaintiff Lawyer's Guide to Proving Liability
    (Trial Guides 2006)............................................................. 12

Mahoney, Brian, *4 Tips to Winning Summary Judgment*,
    https://www.cravath.com/files/Uploads/Documents/
    Publications/3473379 _1.pdf (May 16, 2014)………………………... 12

**REPLY BRIEF OF APPELLANT**

The Defendants-Appellees' Brief underscores the legal errors committed by the district court: adopting a "real-world" paying client standard of its own making at odds with this Court's precedent for setting the award of attorney's fees; basing the fee award on a discredited rule of proportionality universally rejected by the federal courts; reducing the fee award because of its misperception of the notice-pleading complaint; reducing the award for time properly spent on summary judgment; improperly multiplying deductions; or reducing the award without any supporting evidence. Simply put, the Defendants-Appellees' Brief is an echo of the errors they led the District Court to adopt. Reversal is required to correct this abuse of discretion.

## ARGUMENT

### I. THE "REAL-WORLD" PAYING CLIENT STANDARD URGED BY THE DEFENDANTS-APPELLEES AND ADOPTED BY THE DISTRICT COURT IMPROPERLY CLOSES THE COURTS TO CONSUMERS.

The Defendants-Appellees ("Debt Buyers") ask this Court to depart from all known standards for awarding fees in public interest cases by affirming the district court's unprecedented "real-world" paying client standard. Fortunately, that approach has been soundly rejected by this Court.

In the real world, a financially distressed consumer cannot afford to pay the market rate for legal representation. Congress created an incentive for attorneys to represent plaintiffs in Fair Debt Collection Practices Act ("FDCPA") cases by providing for fee shifting. Reducing fees to the amount that a court speculates a consumer would be willing to pay would discourage attorneys from accepting representation of FDCPA plaintiffs, inconsistent with the FDCPA's statutory scheme. "Simply put, if attorney fee awards in these cases do not provide a reasonable return, it will be economically impossible for attorneys to represent their clients. Thus, practically speaking, the door to the courtroom will be closed to all but those with either potentially substantial damages, or those with sufficient economic resources to afford the litigation expenses involved. Such a situation would indeed be ironic: it is but precisely those with ordinary consumer complaints and those who cannot afford their attorney fees for whom these remedial acts are intended." *Jordan v. Transnational Motors, Inc.*, 537 N.W.2d 471, 474 (Mich. App. 1995).

This Court soundly rejected the same approach denominated as the "billing judgment" standard in *Quaratino v. Tiffany & Co.,* 166 F.3d 422, 425-26 (2d Cir. 1999). "The most direct response to the district court's fee calculation innovation, however, is that this Court does not follow, and has

not suggested that it would be inclined to follow, the billing judgment rule that the district court developed." *Id.* Rather, this Court endorsed the lodestar method in use to this day: "[W]e restrict our analysis to the reasoning in fact employed by the district court in reaching its fee award—'billing judgment'—and, having found it flawed, remand for the award of a fee based on the *actual* lodestar." *Id.* at 427.

The presumptively reasonable fee award is the product of a reasonable hourly rate times hours reasonably expended. The "reasonable hourly rate" is the market rate based on the experience and skills of the attorney. This "market rate" analysis has been performed by numerous district judges in Connecticut; the current standard for Ms. Ferrari's counsel is $400 per hour. The Debt Buyers provided no evidence that any lower rate was reasonable, or feasible, to attract an attorney to represent a financially distressed consumer.

"[T]he most critical factor" in a district court's determination of what constitutes reasonable attorney's fees in a given case "is the degree of success obtained." *Barfield v. N.Y. City Health & Hosps. Corp.,* 537 F.3d 132, 152 (2d Cir. 2008). Here, plaintiff recovered the maximum statutory damages under federal law. Where the statutory damages are limited, recovery of the full amount of statutory damages is complete success. *Nigh*

*v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 190 (4th Cir. 2007) (Truth in Lending Act: "Koons's contention that this recovery is somehow de minimis betrays a profound misunderstanding of either the expression or the facts of this case. Nigh received the maximum recovery permissible under the TILA").

The Debt Buyers and the District Court latch on to this Court's language in *Simmons v. New York City Transit Authority*, noting "[t]he presumptively reasonable fee boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" 575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 493 F.3d 110, 112, 118 (2d Cir. 2007)). But this Court has not applied the doctrine of "what a reasonable, paying client would be willing to pay" outside the context of determining whether it is appropriate to choose higher rates garnered by out-of-district lawyers. *Arbor Hill, supra; Simmons, supra; Bergerson v. New York State Office of Mental Health, Cent. New York Psychiatric Ctr.,* 652 F.3d 277, 289 (2d Cir. 2011); *Lochren v. Cty. of Suffolk*, 344 F. App'x 706 (2d Cir. 2009); *see also McDaniel v. Cty. of Schenectady,* 595 F.3d 411, 422 (2d Cir. 2010) (noting that district court's reliance on *Arbor Hill* in this case

was properly limited its more flexible application of the forum rule with respect to reasonable rates); *Konits v. Karahalis*, 409 F. App'x 418, 422 (2d Cir. 2011) (district court should assess case-specific considerations at the outset, factoring them into its determination of reasonable hourly rate for attorneys' work).

The question of what a reasonable, paying client would be willing to pay loses its relevance outside the context of what the proper rate should be for the attorney's time.  Ms. Ferrari hired an experienced attorney who achieved excellent results: the maximum recovery available. The Debt Buyers speculate that *if* Ms. Ferrari had to pay, she would have insisted that the fee be reduced. But the ability or willingness of a "real-world" financially distressed consumer to pay for legal representation is simply not a valid factor.

Admittedly there is a "billing judgment" factor as to the hours expended. The Debt Buyers' brief at 36 shows counsel's exercise of billing judgment: the plus signs indicated that more time was actually expended. No compensation should be awarded for unproductive time, such as deploying three attorneys where one would suffice, or time expended on separate losing theories. *Copeland v. Marshall*, 641 F.2d 880, 891-92 (D.C. Cir. 1980). But, as will be demonstrated below, all the time expended was aimed

productively, effectively, and successfully at demonstrating to the Debt Buyers that their liability was so clear that they should prudently avoid the time and expense of a trial.

## II. IN THIS FEE-SHIFTING CASE, THE DISTRICT COURT'S CONSIDERATION OF PROPORTIONALITY WAS A CLEAR LEGAL ERROR.

The district court's ruling began with the telling observation that the fee request was "a total of more than 12 times the amount that she recovered for her client." It ended with an award of "more than four times the amount that counsel obtained for her client."[1] These comments reveal that the purpose of the reduction between the opening and closing statements was the struggle to reduce the fee to a proportion more acceptable to the court. "[A]

---

[1]  Naturally, FDCPA fee awards typically exceed the recovery by a substantial factor. See cases cited at JA 000421; *see also Pape v. Law Offices of Frank Peluso*, Civ. No. 3:13cv63 (JGM) (Feb. 25, 2016) ($34,100 at $400/hr plus $1624.80 costs on $1,000 recovery); *Evankavitch v. Green Tree Servicing, LLC,* 2014 WL 4437645, at *5 (M.D. Pa. Sept. 9, 2014) ($85,000 in fees on $1,000 statutory recovery); *Douyon v. N.Y. Med. Health Care, P.C.,* 49 F. Supp. 3d 328 (E.D.N.Y. 2014) (awarding nearly $140,000 in fees for a statutory damages recovery of $1050); *Serna v. Law Office of Joseph Onwuteaka, PC,* 2014 WL 3749652 (S.D. Tex. July 29, 2014) (award of almost $80,000 attorney's fees where the plaintiffs recovered $1,000); *Randle v. H & P Capital, Inc.,* 513 Fed. Appx. 282 (4th Cir. 2013) ($75,876.59 in attorney fees and costs on $6000 settlement): *Heritage Pac. Fin., L.L.C. v. Monroy,* 156 Cal. Rptr. 3d 26 (Cal. Ct. App. 2013) (finding that the award of $87,525 was not disproportionate on award of only $1 statutory damages because the consumer obtained a significant decision that could deter the debt buyer from repeating its deceptive claims).

rule calling for proportionality between the fee and the monetary amount involved in the litigation would effectively prevent plaintiffs from obtaining counsel in cases where deprivation of a constitutional right caused injury of low monetary value," as this Court recognized in *Kassim v. City of Schenectady,* 415 F.3d 246, 252 (2d Cir. 2005) (citing this Circuit's longstanding law to the same effect). And nothing in this Court's presumptively reasonable fee jurisprudence changes this black letter principle. *CARCO GROUP, Inc. v. Maconachy,* 718 F.3d 72, 86 (2d Cir. 2013) (district court erred in reducing "presumptively reasonable fee" by twenty percent "to bring the fee award within the contours of the amount of damages awarded" holding "there is no rule requiring a fee award to be proportionate to the damages").

The Debt Buyers suggest that the District Court's before-and-after reduction comments regarding the relationship between the amount of the award and the fees had nothing to do with the decision to make the reduction. The tone and the context of the District Court's statements suggest otherwise. Indeed, the Debt Buyers offer no other reason for the proportionality comments which go a long way towards explaining the District Court's other errors set forth in this appeal.

### III. THE DISTRICT COURT'S EXTENSIVE FEE REDUCTION BASED SOLELY ON THE NOTICE-PLEADING COMPLAINT WAS IMPROPER.

The FDCPA is a "'comprehensive and reticulated statutory scheme' *Sayyed v. Wolpoff & Abramson,* 485 F.3d 226, 233 (4th Cir.2007)." *Russell v. Absolute Collection Services, Inc.*, 763 F.3d 385, 392 (4th Cir. 2014); "a comprehensive and complex federal statute." *See also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 587 (2010). It is an arcane legal field.

To their credit, the Debt Buyers themselves do not claim anywhere in their brief that *they* did not understand what claims were being made against them. Nevertheless, the court below projected its own perception that the Debt Buyers were left guessing about the cause of action stated in the complaint, even though the complaint set forth all the facts entitling Ms. Ferrari to relief. The Debt Buyers' only claim seems to be that they did not know who was accused of doing what – a proper subject for discovery on both sides. But that claim ignores the fact that the parties were a debt buying entity, its employee, and its lawyer (wife of the owner) *jointly* acting to pursue Ms. Ferrari on a disputed debt in small claims court. Under agency theory, there was no differentiation in liability. *In re FDCPA Cognate Cases*, 2016 WL 1273349 (W.D. Mich. Mar. 28, 2016) ("Collecting the debt

is exactly what the debt collectors hired them to do. Nothing in the text of the FDCPA creates a heightened standard of control beyond traditional agency law and doing so by judicial fiat would undermine the purpose of the FDCPA."); *Dina v. Cuda & Assocs.,* 950 F. Supp. 2d 396, 405 n.9 (D. Conn. 2013) (debt buyer liable for attorney's acts).

Indeed, Ms. Ferrari's complaint against these Debt Buyers reads uncannily like the most recent of several Consumer Financial Protection Bureau initiatives against debt buyers for their FDCPA violations:

> The Consumer Financial Protection Bureau (CFPB) today [April 25, 2016] ordered the debt collection law firm Pressler & Pressler, LLP, two principal partners, and New Century Financial Services, Inc., a debt buyer, to stop churning out unfair and deceptive debt collection lawsuits based on flimsy or nonexistent evidence. The consent orders bar the companies and individuals from illegal practices that can deceive or intimidate consumers, such as filing lawsuits without determining if debts in question are valid.[2]

At the pleading stage, a plaintiff merely must state a plausible claim, "enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Anderson News, L.L.C. v. Am. Media, Inc.,* 680 F.3d 162, 184 (2d Cir. 2012), quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007). Ms. Ferrari did that here. The district court erroneously dismissed the complaint on the basis that it must set forth facts

---

[2]    http://www.consumerfinance.gov/about-us/newsroom/cfpb-takes-action-halt-illegal-debt-collection-practices-lawsuit-mill-and-debt-buyer/.

"to plausibly entitle the plaintiff to relief against *each* defendant for *each* of plaintiff's statutory claims." (Emphasis added.) But the notice-pleading standard requires no such detail, as set forth in Ms. Ferrari's Opening Brief at 26-28. Here, discovery ultimately enabled Ms. Ferrari to prepare a comprehensive fact and evidence pleading complaint which was a virtual brief, far exceeding the notice-pleading standard. JA:000400.

Since the notice-pleading complaint set forth the facts on which the claim was based, it was error to deduct the modest 1.2 hours for preparing the complaint. It is notable that the only document that the court or the Debt Buyers claimed to be inadequate was the notice-pleading complaint. No one criticized the quality of the motions and briefs that Ms. Ferrari filed.

It was also error to deduct 12.45 hours for responding to the Debt Buyer's motion for judgment on the pleadings based on their untenable theory that the FDCPA claims in the complaint had been decided by the small claims court wherein they had not been raised – and even though the alleged violations as to improper fees and interest were substantiated by the small claims court's denial of such fees and interest. Ms. Ferrari *had* to incur the time to oppose the Debt Buyer's dilatory and largely-denied motion. Virtually none of that time had anything to do with the Debt Buyers' specious claim that the complaint did not state a cause of action.

## IV. THE DISTRICT COURT'S FEE REDUCTIONS BASED ON SUMMARY JUDGMENT MOTIONS WERE IMPROPER.

It was error to deduct 15.05 hours for time preparing summary judgment motions on the notion that either summary judgment motion was "premature," directly contrary to the federal rules. Such a motion may be filed "at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). The initial summary judgment motion identified the same "areas of potential exposure" as appeared in the amended complaint; it was because of this "potential exposure" that the Debt Buyers decided to settle. JA:000449. Clearly, the Debt Buyers had no answer to the summary judgment motion or to the amended complaint: They merely kept seeking extensions of time. ECF Nos. 56, 62. JA:000005-06.

This Court has made it clear that a district judge may not prevent a party from filing a summary judgment motion. *Eisemann v. Greene*, 204 F.3d 393, 397 (2d Cir. 2000); *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir. 1987). Here, the court effectively did just that, by summarily denying Ms. Ferrari's summary judgment motion twice (ECF Nos. 59, 64) and even suggesting that she wait until after a possible new motion to dismiss had been decided. (ECF No. 64). JA:000005-06.

The best practitioners recommend preparing for summary judgment at the outset of the case, so as plan the discovery necessary to support it. "Expert lawyering requires preparation, discipline and aggression, and that's especially true at the summary judgment stage, which should be on attorneys' minds from the very first day of a case if they expect to win it, top partners told Law360."[3] The best practitioners also draft their jury instructions at the outset for the same reason.[4]

A reasonable real-world client expects her lawyer to progress toward early resolution of the case, and not to get sidetracked by dilatory motions. For the district court to penalize Ms. Ferrari by deducting time properly spent preparing a summary judgment motion for the purpose of promoting the speedy, efficient, and inexpensive resolution of the substantive issues (F.R. Civ. P. 1) is a reversible abuse of discretion.

Contrary to best practices, the Debt Buyers complain that Ms. Ferrari should have waited to begin working on the summary judgment motions until the resolution of the Debt Buyer's untenable Rule 12 motion. The court below disagreed. ECF No. 28, JA:000003. "Discovery is not normally

_____

[3] https://www.cravath.com/files/Uploads/Documents/Publications/3473379_1.pdf.

[4] Friedman, Rick, and Malone, Patrick, Rules of the Road: A Plaintiff Lawyer's Guide to Proving Liability 39 (Trial Guides 2006).

stayed during the pendency of a motion to dismiss, absent a showing of good cause." *Briscoe v. City of New Haven,* 2009 WL 5184357,*3 (D. Conn. 2009); *Twin City Fire Insurance Company v. Employers Insurance of Wausau,* 124 F.R.D. 652 (D. Nev. 1989) ("a pending Motion to Dismiss is not ordinarily a situation that in and of itself would warrant a stay of discovery."); *United States v. Board of Educ. of City of Chicago,* 636 F. Supp. 1046, 1047 (N.D. Ill. 1986) (denying motion to suspend discovery because motions to dismiss are usually denied).

"The relevant issue ... is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir.1992). A reasonable attorney would have begun preparing a dispositive motion to move the case along as soon as she acquired enough evidence to support it. That is what happened here. Penalizing counsel for doing the right thing – especially after the district court expressly authorized the motion -- was a clear abuse of discretion.

## V.    THE DISTRICT COURT'S DOUBLE DEDUCTIONS WERE REVERSIBLE ERROR.

Because of its perception of the quality of the complaint, the court awarded a reduced rate of $250 per hour. But then it eliminated the time for

the complaint altogether, instead of merely reducing the hourly rate. It deducted 12.45 hours for the complaint and response to the Debt Buyers' unsuccessful *res judicata* motion. Then, the district court deducted the 12.45 hours *again* –"because defendant's counsel were put in the position of expending funds to seek dismissal of the inadequate complaint." Spec. Appx. 010. The court cited no authority for deducting the same amount a second time, nor have the Debt Buyers. For instance, Fed. R. Civ. P.11(c) would not apply. In effect, the court sanctioned plaintiff for opposing the Debt Buyers' dilatory pleading and specifically awarded the time to the Debt Buyers. Then it summarily denied Ms. Ferrari's motion for reconsideration wherein she pointed out this glaring error. JA:000548.

The Debt Buyers twist themselves in knots trying to explain why cutting hours as unnecessary and then cutting counsel's rate based on the fact that she incurred the time for these same hours is not double counting. Notably, they do not argue that double deductions are permissible. In the end it is clear that the District Court double and even triple reduced the fee award for the same conduct. No rule of law supports these deductions which amount to clear legal error.

## VI. THE DISTRICT COURT IMPROPERLY IGNORED EVIDENCE AS TO THE MARKET RATE FOR ATTORNEYS IN THE DISTRICT.

Ms. Ferrari provided abundant evidence of her counsel's $400 market rate and the even higher market rate in the district. JA:000437-40. The Debt Buyers had no contrary evidence to submit. Instead, they asked the court to use the one recent case that awarded $350 per hour. It is unbecoming for defendant collection lawyer, who commands $500 per hour, to begrudge the consumer's counsel a lower rate.

Instead of applying the evidence to establish the market rate, the district court plucked a figure out of thin air. However, this Court requires the market rate to be determined by "an evaluation of evidence proffered by the parties." *Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005). The court should award "compensation available in the marketplace" so as not to "undermine[] § 1988(b)'s central purpose of attracting competent counsel to public interest litigation." *Id.* The lodestar (now denominated the presumptively reasonable fee) is to be based on market rates. *Reiter v. MTA New York City Transit Auth.,* 457 F.3d 224, 232 (2d Cir. 2006). Establishing a lodestar "requires that the district court, in addition to taking judicial notice of rates awarded in prior cases, consider any evidence the parties wish to present and determine the prevailing rate

within the relevant community for attorneys of comparable skill and experience performing work on comparable cases." *Patterson v. Balsamico*, 440 F.3d 104, 124 (2d Cir. 2006).

The district court erred by disregarding the abundant, uncontradicted, and uncontested evidence of the lodestar rate.

## CONCLUSION

The District Court's reduction in its award of fees was an abuse of discretion. This Court should reverse that determination and remand the case with instructions to award Plaintiff the sum of $36,284 in attorney fees along with her costs and fees in prosecuting this appeal.

Respectfully submitted,

/s/ Anthony J. Majestro
Anthony J. Majestro (WVSB 5165)
Powell & Majestro, PLLC
405 Capitol Street, Suite P1200
Charleston, WV 25301
Phone: 304-346-2889
Facsimile: 304-346-2895
amajestro@powellmajestro.com

Counsel for Appellant, Liz Ferrari

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,621 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac, Version 15.19 in 14-point font size in Times New Roman.

/s/ Anthony J. Majestro
Anthony J. Majestro (WVSB 5165)

**CERTIFICATE OF SERVICE**

I certify that on May 10, 2016, the foregoing Reply Brief of Appellant was served on all parties or their counsel through the CM/ECF system.

/s/ Anthony J. Majestro
Anthony J. Majestro (WVSB 5165)